**JOHN DEERE LIMITED and Deere & Company, Appellants,**

v.

**SPERRY CORPORATION, Appellee.**

No. 84–1070.

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1984.

Decided Feb. 5, 1985.

Anthony S. Volpe, Philadelphia, Pa., Dugald S. McDougall (Argued), Chicago, Ill., for appellants.

Michael J. Mangan (Argued), Philip G. Kircher, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee.

Before GIBBONS and GARTH, Circuit Judges and ROSENN, Senior Circuit Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal presents the question whether 28 U.S.C. § 1782(a),[1] which governs judicial assistance rendered to foreign and international tribunals and to litigants before such tribunals, requires a district court to consider: (1) the availability of reciprocal foreign procedures, and (2) the ultimate admissibility of evidence in the foreign jurisdiction prior to granting a discovery order requested by a foreign litigant. We hold 28 U.S.C. § 1782(a) imposes no such requirements.

### I.

This matter arises from a patent infringement action now pending in the Federal Court of Canada between Sperry Corporation, as plaintiff, and John Deere Limited and Deere & Company, as defendants. Sperry and Deere are both major farm equipment manufacturers. The Canadian action alleges that Deere has infringed a patent which Sperry holds for the manufacture of a hay-harvesting machine. Deere now seeks to depose two American employees of Sperry, Horace McCarty and Emmett Glass, who are named as co-inventors of the patented machine. Deere further requests that in connection with their depositions, McCarty and Glass be required to

---

1. 28 U.S.C. § 1782(a) provides:

   § 1782. Assistance to foreign and international tribunals and to litigants before such tribunals.

   a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

   A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

produce documents pertaining to the disputed patent.

Similar litigation was pursued and concluded against Sperry in the United States. In 1968, Deere commenced a declaratory judgment action in the Eastern District of California to contest the validity of Sperry's American patent for a comparable harvester. During the course of that litigation, Deere took depositions of each Sperry employee it now seeks to depose. Full trial on the merits was held. The district court concluded Sperry's U.S. patent was invalid because the harvester design was obvious when compared to prior state-of-the-art products. *See Deere & Co. v. Sperry Rand Corp.*, 322 F.Supp. 397 (E.D.Cal. 1970). The court's decision was affirmed on appeal, *see Deere & Co. v. Sperry Rand Corp.*, 513 F.2d 1131 (9th Cir.), *cert. denied*, 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975).

While the U.S. litigation was pending, Sperry secured a Canadian patent for manufacture of the identical harvester. On December 5, 1978, after the close of the American action, Sperry surrendered its original Canadian patent, No. 924,111, and simultaneously obtained a Canadian reissue patent, No. 1,043,577. This latter patent, unlike the original Canadian patent, was based upon claims and specifications that distinguished it from the earlier machine model. The reissue was based largely upon affidavits submitted by both McCarty and Glass and contained matter not present in the earlier U.S. or Canadian patents.

On January 8, 1979, Sperry filed an infringement action against Deere in the Federal Court of Canada. Deere asserted the invalidity of the Canadian patent as a defense and challenged the accuracy of the McCarty-Glass affidavits on which the reissue patent was based.

On September 29, 1983, Deere initiated this action pursuant to 28 U.S.C. § 1782 in the District Court for the Eastern District of Pennsylvania, the district wherein both McCarty and Glass reside. Deere brought an ex parte motion seeking an order directing Sperry and its employees, McCarty and Glass, to produce certain documents and to appear and testify on oral deposition. The district court entered the order and gave Sperry ten days within which to respond or otherwise plead. On October 11, 1983, Sperry moved to vacate the order.

On November 16, 1983, the district court issued a memorandum and order vacating its prior order. *John Deere Limited v. Sperry Corporation*, 100 F.R.D. 712 (1983). The court concluded that granting the discovery order would not further reciprocity interests, both because Canadian law apparently precluded the use of letters rogatory [2] and because the material sought was not clearly admissible at trial in Canada. *Id.* at 714. Thus, Deere was denied all the relief it sought in the present action. Thereafter, Deere filed a request for reconsideration which was denied. We reverse.

## II.

The issue before this court is whether discovery orders under 28 U.S.C. § 1782 should be freely available to persons interested in foreign litigation. Had the Canadian tribunal directly petitioned the district court to permit testimony to be taken, there would be little question as to the propriety of honoring the request for assistance. Without the issuance of letters rogatory, the district court questioned both whether Canadian courts would honor similar requests from American litigants and whether the material sought would be admissible under Canadian rules of evidence. To the extent that the district court's decision to deny discovery was predicated upon lack of reciprocity and admissibility, we hold that the district court improperly exercised its discretion.

---

**2.** Letters rogatory are formal written requests, sent by a court in which an action is pending to a court or judge of a foreign country, asking that the testimony of a witness resident within the foreign jurisdiction be taken and transmitted for use in the court where the action is pending. *See* Fed.R.Civ.P. 28.

## A.

28 U.S.C. § 1782 reflects a determination on the part of Congress to broaden the scope of international judicial assistance afforded by the federal courts. Although the legislative history of section 1782 is brief, the general statement which accompanies the legislation notes:

Until recently, the United States has not engaged itself fully in efforts to improve practices of international cooperation in litigation. The steadily growing involvement of the United States in international intercourse and the resulting increase in litigation with international aspects have demonstrated the necessity for statutory improvements and other devices to facilitate the conduct of such litigation. Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.

It is hoped that the initiative taken by the United States in improving its procedures will invite foreign countries similarly to adjust their procedures.

S.Rep. No. 1580, 88th Cong., 2d Sess., reprinted in 1964 U.S.Code & Ad.News 3782, 3783.

As a cooperative measure, section 1782 cannot be said to ignore those considerations of comity and sovereignity that pervade international law. A grant of discovery that trenched upon the clearly established procedures of a foreign tribunal would not be within section 1782. That the statute is an attempt to codify measures for international judicial assistance, however, does not imply a reciprocity requirement. Rather, the legislation is largely exemplary and aspirational, an attempt to stimulate reciprocity.

The liberal intent to provide judicial assistance whether or not reciprocity exists has been acknowledged as a primary statutory goal since section 1782's inception.

Indeed, the Chairman of the Advisory Committee to the United States Commission on International Rules of Judicial Procedure has written that the sponsors of the legislation hoped that the provisions for formal judicial assistance not only would enable full assistance to be made available, but also would furnish an "... example of *unilateral, nonreciprocal, internal legislation, ...* which other countries may wish to follow." Amram, *Public Law No. 88–619 of October 3, 1964—New Developments in International Judicial Assistance in the United States of America,* 32 D.C.Bar J. 24, 33 (1965) (emphasis added).

Courts also have recognized that the unilateral character of the legislation does not require reciprocity as a predicate to the grant of a discovery order. *See In re Request for Judicial Assistance from Seoul,* 428 F.Supp. 109, 112 (N.D.Cal.1977), *aff'd* 555 F.2d 720 (9th Cir.1977); *In re Letter Rogatory from the Justice Court, District of Montreal, Canada,* 523 F.2d 562, 565 (6th Cir.1975). Thus, although the district court was not prohibited from giving the absence of reciprocity some consideration in the exercise of its discretionary power, its decision should not have been predicated upon a finding of reciprocity.

## B.

The district court determined that a discovery order pursuant to section 1782 "... would not enhance the reciprocity interests inherent in the statute, nor the public policy considerations at stake." 100 F.R.D. at 714. In addition, the district court stated: "[n]or does it appear that under Canadian rules of evidence the discovery sought will be admissible at trial." *Id.* In support of its conclusion as to a lack of reciprocity, the court observed that "Canadian law appears to preclude the use of letters rogatory, since Canadian courts will not honor letters rogatory issued by foreign tribunals." *Id.*

Whatever the Canadian law might be with respect to reciprocity, Congress did not intend section 1782 orders to depend upon reciprocal agreements. Nor should

the practice of Canadian courts in refusing to render judicial assistance, be the determinative factor in the construction given section 1782 by an American court.

We are also satisfied that permitting discovery in this case would not offend the Canadian tribunal. Our decision does not countenance the use of U.S. discovery procedures to evade the limitations placed on domestic pre-trial disclosure by foreign tribunals.[3] Concern that foreign discovery provisions not be circumvented by procedures authorized in American courts is particularly pronounced where a request for assistance issues not from letters rogatory, but from an individual litigant. In *In re the Court of the Commissioner of Patents For the Republic of South Africa*, 88 F.R.D. 75, 77 (E.D.Pa.1980), the court denied a request for discovery where it was doubtful that the documents and testimony sought would be discoverable under South African law. However, in the present case, as we have noted, the testimony sought would generally be subject to discovery were all the parties in Canada.[4]

To require that a district court undertake a more extensive inquiry into the laws of the foreign jurisdiction would seem to exceed the proper scope of section 1782. Indeed, to condition issuance of a section 1782 order upon the trial court's estimate of the foreign jurisdiction's likelihood of granting letters rogatory not only would force American courts to predict the actions of another country's tribunal, but also would contradict the express purpose of section 1782. We do not believe that Congress intended litigants interested in foreign proceedings to resort to section 1782 only upon an adequate showing that they could obtain letters rogatory from the foreign forum. Such a reading would virtually nullify the statutory provision that "interested persons" may apply for discovery orders.[5]

Moreover, other courts, when confronted with letters rogatory, have concluded that federal courts should neither decide technical questions of foreign law relating to the subject-matter jurisdiction of foreign tribunals, nor determine the admissibility before such tribunals of the evidence sought. *See In re Request for Judicial Assistance from the Seoul District Criminal Court, Seoul, Korea*, 555 F.2d 720, 723 (9th Cir. 1977); *In re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir.1976). A similar policy applies here. Although the district court ruled in part that a section 1782 order should be denied because the evidence sought appeared inadmissible in a Canadian court, we do not believe such a decision was within the province of the district court. Where, in the first instance, the

---

**3.** The legislative history states:
In exercising its discretionary power, the Court may take into account the nature and attitudes of the Government of the country from which the request emanates and the character of the proceedings in that country, or in the case of proceedings before an international tribunal, the nature of the tribunal and the character of the proceedings before it. 1964 U.S.Code & Ad.News at 3788.
This would seem to authorize district courts to scrutinize the underlying fairness of foreign proceedings to ensure they comply with notions of due process. It is doubtful whether such language can be expanded to impose a requirement that district courts predict or construe the procedural or substantive law of the foreign jurisdiction.

**4.** The Federal Court Rules are the Canadian rules governing discovery. Rule 465(5) provides:
(5) The assignor of a patent of invention, copyright, trade mark, industrial design or

any property, right or interest may be examined for discovery by any party who is adverse to an assignee thereof. (Where the context so permits, a reference in this Rule to an individual to be questioned or to an individual being questioned includes such an assignor.)
Clearly, this provision authorizes and contemplates the examination for discovery of persons in precisely the position of McCarty and Glass. The objections raised in *Court of Commissioner of Patents, supra,* are thus not applicable.

**5.** Section 1782 provides that the district court's order to a witness directing that his testimony be given may be made "... pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or *upon the application of any interested person* ..." (emphasis added). For the full text of 28 U.S.C. § 1782, see *supra,* note 1.

matter sought would be discoverable were all persons within the foreign jurisdiction, the foreign tribunal should decide what use it wishes to allow the elicited documents and testimony.

### III.

We have held that a district court need not find reciprocity in the issuance of letters rogatory before it orders discovery under section 1782. We have also held that a district court is not to predict the admissibility of discovered evidence in foreign tribunals. Yet, even if we had concluded that a requirement of reciprocity had to inform the decision of a district court, events in the present case have proved that the district court erred when it denied discovery.

In denying discovery, the district court concluded that "... the continuance of the section 1782 order would represent an unwelcome intrusion into the judicial processes of a foreign tribunal." 100 F.R.D. at 714. Thereafter, Deere applied to the Federal Court of Canada for an order compelling Sperry to produce McCarty and Glass for examination on discovery.

On August 30, 1984, prior to this court's consideration of Deere's appeal, the Federal Court of Canada (McNair, J.) issued an order and opinion which required Sperry to produce McCarty, but not Glass, for further examination. The court explained its ruling by distinguishing the status of each

witness; because McCarty is a corporate officer, as contrasted with Glass, who is merely a corporate employee, the court held that Canadian discovery rules required Sperry to secure the attendance at depositions of the former (McCarty) but not the latter (Glass).[6] Although earlier courts had reasoned that Canadian rules of their own force could not operate to compel examination of a person outside the jurisdiction of Canada, Justice McNair found that sufficient identity existed between Sperry, the Canadian plaintiff, and its non-resident officer, McCarty, to allow further examination "for special reason in an exceptional case." In effect, McCarty's position as a corporate officer was deemed to place him before the Canadian court as a member of Sperry Corporation. Because such virtual representation could not be considered to run between a corporation and its employees, Sperry was not required to produce Glass.

The decision of the Federal Court of Canada determines this appeal with respect to McCarty. The Canadian court has definitively stated that discovery will be allowed. The only remaining question for this court is whether Glass should be ordered to testify pursuant to section 1782.

It is sufficient that Justice McNair determined McCarty's testimony to be both material and required by the equities of the case.[7] To the extent that Glass' testimony

---

6. The particular rule upon which the court relied was Federal Court Rule 465(19). Rule 465(19) states:

(19) The Court may, for special reason in an exceptional case, in its discretion, order a further examination for discovery after a party or assignor has been examined for discovery under this rule.

As explained in text above, the basis of the Canadian court's ruling was that a "special reason" existed to order McCarty's examination.

7. The Canadian court received as an admission against Sperry an affidavit which Sperry had submitted in support of its motion to vacate the initial order of the U.S. District Court. Paragraph 14 of the affidavit avers:

14. I understand that Deere is taking the position that it could not secure an order from the Federal Court of Canada directing that Sperry produce the inventors for dis-

covery because, "since neither McCarty nor Glass resides in or can be found in Canada, no Canadian legal procedure exists by which they can be compelled to give testimony in Canada or for use in the pending Canadian action": *see* paragraph 6 of Deere's application. It is true that the inventors themselves may not be subject to a subpoena issuing from the Federal Court of Canada. However, the inventors are both within the power and control of Sperry. As Plaintiff in the Canadian action, Sperry has sought the aid of a Canadian court and has invoked the jurisdiction of the Federal Court of Canada. It would have been open to Deere and, in fact, it is still open to Deere, to apply to the Federal Court of Canada, not for an order directing the inventors to make themselves available for discovery, but for an order directing *Sperry* to produce the inventors for discovery in connection with the Canadian action.

and the documents which he produces may augment McCarty's, we find his testimony would be similarly material and equitable. The fact that the Canadian court may question its own power to devise and grant an order for the discovery of a corporate employee resident outside its jurisdiction cannot constrain this court in the application of section 1782. This is particularly so where it is clear that the testimony sought would be discoverable were all persons within the foreign jurisdiction. To decide otherwise would be to invoke the very reciprocity requirements section 1782 was designed to avoid.

Nor can concern for the ultimate admissibility of the discovered material be argued as a limit on section 1782 orders. The Canadian tribunal must necessarily decide the use to which such evidence is put. As long as the discovered information is intended for use in a foreign proceeding which comports with notions of due process, the requirements of 28 U.S.C. § 1782 have been met and an appropriate order should issue.

### IV.

The November 16, 1983 and January 26, 1984 orders of the district court denying discovery to Deere will be reversed and the case will be remanded to the district court for proceedings consistent with the foregoing opinion.

---

The Federal Court of Canada accordingly found that Sperry was equitably estopped from adopting inconsistent positions in the American and Canadian litigation. Having acknowledged the power of the Canadian court to compel discovery, Sperry was required to produce McCarty.