In re REQUEST FOR ASSISTANCE FROM MINISTRY OF LEGAL AFFAIRS OF TRINIDAD AND TOBAGO.

No. 86–1461–Civ.

United States District Court, S.D. Florida, Miami Division.

Sept. 29, 1987.

Jean Mullenhoff, Asst. U.S. Atty., Miami, Fla., Jeffrey Kay, Fort Lauderdale, Fla., for John May and Joseph Azar.

MEMORANDUM OPINION (II)

SCOTT, District Judge.

I. INTRODUCTION. The Motion for Relief from Judgment herein presents a second opportunity in this litigation for the Court to consider the legality of a request by Trinidad and Tobago for the production of bank records of Joseph Azar. On the prior occasion, the Court honored the request for assistance pursuant to 28 U.S.C. § 1782, and denied Azar's motion for a protective order. *In Re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 648 F.Supp. 464

178

(S.D.Fla.1986).[1]  In this motion, however, Azar raises an issue not previously considered by the Court.  He now contends that because the domestic laws of Trinidad and Tobago would not permit production of such bank records, his records should not be subject to production by a United States bank under a § 1782 request.

Initially the government objects, arguing that this contention is procedurally barred due to Azar's failure to raise the issue in the initial proceeding.  *See Crutcher v. Aetna Life Ins. Policy*, 746 F.2d 1076, 1083 (5th Cir.1984); *United States v. O'Neill*, 709 F.2d 361, 373 (5th Cir.1983).  While the government's position may be well-founded legally, the importance and novelty of this litigation, as previously noted by the Court, mandate that the substantive issue be fully addressed in order to furnish a complete record to the reviewing tribunal.  For this reason, both parties were permitted to offer testimony and documentation on the acceptable procedures and practices under Trinidad and Tobago law.  Notwithstanding the presentation and receipt of the evidence, the Court remains convinced that the legislative purpose and intent of 28 U.S.C. § 1782 compel denial of the motion.

II.  DISCUSSION.  There is no need to detail the history of this litigation as the facts were adequately discussed in the previous opinion.  Nor will the Court revisit legal issues previously decided, i.e., (a) whether the Attorney General of Trinidad and Tobago is an interested party within the meaning of 28 U.S.C. § 1782 and, (b) whether there is a requirement of an ongoing proceeding before a tribunal in order to obtain evidence under the statute.  The Court will, however, review the purpose and intent of 28 U.S.C. § 1782 in the context of the latest contention of Mr. Azar.

1.  United States Deference.

■ Azar argues that 28 U.S.C. § 1782 was not designed to be utilized as a discovery device any time the identical evidence could not be obtained under the law of the requesting foreign nation.  He contends that at the time of the initial decision

on this matter, neither the government nor he was aware of this argument and therefore this Court must consider it now in order to render a judgment that is not "mistaken."  *See*, Fed.R.Civ.P. 60(b).

Azar misreads both the intent of the statute and the reasoning behind this Court's earlier decision.  As a matter of law and policy, United States courts should refrain from undertaking an extensive analysis of foreign law in determining whether to honor a request for judicial assistance, and should confine its inquiry solely to whether the evidence requested comports with language of 28 U.S.C. § 1782:

> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

The legislative purpose of this statute was to improve and promote international cooperation in litigation.  Our courts should not become entangled in interpreting foreign law when deciding whether to grant requests for judicial assistance.  So long as the requests do not contravene the laws of the United States, they should be honored.  It should be the responsibility of the parties before the foreign tribunal to argue the technical and procedural questions of local law, such as the admissibility of evidence.  Foreign tribunals are far more competent to decide issues of their own making than are United States courts.  If the situation were reversed, this Court would certainly prefer to interpret United States law rather than have a foreign tribunal sit in judgment.

In short, a policy of international deference encourages reciprocal treatment and is in keeping with the intent of Congress.  "Public law 88–619 was enacted to liberalize and broaden the scope of the authority vested in the United States courts to render assistance to foreign countries." *In Re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, supra*, at 467.

**1.** The initial decision is presently pending on appeal.  The Court of Appeal temporarily relin-
quished jurisdiction to permit this Court to hear the instant motion.

## 2. Azar's Authority.

Azar relies solely upon two cases for his proposition. A review of these decisions reveals that neither case supports the movant's claim and, indeed, one opinion rejects Azar's present contention.

In *John Deere Limited v. Sperry Corp.*, 754 F.2d 132, 136 (3rd Cir.1985), the John Deere Company sought an order under 28 U.S.C. § 1782 to require employees of Sperry to appear for deposition and produce documents in connection with a patent infringement suit in Canada. The trial court denied Deere's motion, ruling in part that because Canadian law would not allow the documents and testimony sought to be used at a subsequent trial, production should not be permitted under § 1782. On appeal, the Third Circuit reversed, holding that (a) Congress did not intend the validity of a § 1782 order to depend upon reciprocity [2] and (b) federal courts shall not decide technical questions of foreign law relating to the admissibility of the evidence sought before such tribunals.[3]

*In Re Court of Commissions of Patents*, 88 F.R.D. 75 (E.D.Pa.1980) involved a request by a civil litigant to obtain testing and documents in connection with patent litigation in South Africa. In rejecting the request, the district judge opined that since the requesting party could not show that the evidence sought would be discoverable under South African law, "this Court should not by its exercise of the discretion allowed it under Section 1782 allow litigants to circumvent the restrictions imposed on discovery by foreign tribunals." *Id.* at 77. The district court placed great emphasis, perhaps misplaced, upon the fact that the requesting party was an individual litigant and not a foreign country. While the logic of this decision is clearly in dispute, especially in light of the circuit decision in *John Deere Limited v. Sperry Corp.*, as well as the intent of § 1782, the case is distinguishable for another reason. Here, the requesting party *is* a foreign country which has demonstrated the great significance of the present request not only by asking the United States government to obtain the records for use in a criminal investigation, but also by producing in court its current Director of Public Prosecution, Ms. Glayes Gafour, who testified that the bank records requested would be obtainable under domestic law through the Attorney General, and the Central Bank. Therefore, even under the logic of the lower court, the bank records would still be producable under § 1782 in light of Trinidad and Tobago's well documented position.

This analysis demonstrates that these decisions are of little avail to Azar, and are, in fact, authority for the result that the Court reaches today. As stated by the Third Circuit, "a district court is not to predict the admissibility of discovered evidence in foreign tribunals." *John Deere Limited v. Sperry Corp.*, *supra* at 137.

## 3. Dueling Experts.

The Court conducted two evidentiary hearings over several days. The subject of the hearings was to ascertain whether the laws of Trinidad and Tobago permitted the type of production of bank records sought here. Each party produced a qualified expert who offered an opinion on this topic. Azar offered Mr. Bruce Procope, a prominent member of the Bar of Trinidad and Tobago, who concluded, in principal, that the records were not obtainable. In contrast, as noted above, the United States government offered Glayes Gafour, an equally distinguished barrister and current

---

**2.** "Whatever the Canadian law might be with respect to reciprocity, Congress did not intend Section 1782 orders to depend upon reciprocal agreements. Nor should the practice of Canadian courts in refusing to render judicial assistance, be the determining factor in the construction given Section 1782 by an American court." *John Deere Limited, supra* at 135–36.

**3.** "Although the district court ruled in part that a Section 1782 order should be denied because the evidence sought appeared inadmissible in a Canadian court, we do not believe such a decision was within the province of the district court. Where, in the first instance, the matter sought would be discoverable were all persons within the foreign jurisdiction, the foreign tribunal should decide what use it wishes to allow the elicited documents and testimony." *John Deere Limited, supra* at 136–37.

**180**

Public Prosecutor, who disagreed with Mr. Procope and interpreted Trinidad law to permit production.

■ In light of the earlier determination that United States courts should not involve themselves in issues of foreign law, the Court need not decide the difficult questions raised by these conflicting expert viewpoints.[4] Indeed, the battle of experts witnessed in this case is compelling evidence for abstention and deference. This issue is better left to a judicial tribunal in Trinidad, which through its expertise and knowledge of domestic law, can more fully explore and decide the complex evidentiary and legal issues presented in this instance. Here, production of Mr. Azar's records will not violate United States law nor does it conflict with our concept of fundamental fairness and due process.[5] Absent such circumstances, this Court will honor the request of Trinidad and Tobago.

III. CONCLUSION. This has been the Court's second opportunity to emphasize the importance of cooperation in international law advanced by 28 U.S.C. § 1782. In today's world of international crimes and world-wide criminal enterprises, especially in the area of narcotics trafficking and money laundering, the nations of the world must work together to eliminate sanctuaries for criminal activities and provide the production of relevant and sought-after evidence needed for successful prosecution. Congress took a giant step in fostering such cooperation through the enactment of 28 U.S.C. § 1782. Any interpretation of this statute which would defeat or minimize such commendable goals is counter-productive to the noble purpose of our Congress.

With these final observations uttered, the Motion for Relief from Judgment is denied, and, jurisdiction is returned to the Eleventh Circuit Court of Appeal for any further consideration in conjunction with the earlier Memorandum Decision filed herein.

---

4. The testimony produced during the evidentiary hearing clearly confirmed, however, the earlier determination that the Attorney General is an interested party within the meaning of 28 U.S.C. § 1782.

5. *John Deere Limited v. Sperry Corp., supra* at p. 136, fn. 3.