NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3129
_____

IN RE: THE APPLICATION OF KATE O'KEEFFE FOR ASSISTANCE BEFORE A
FOREIGN TRIBUNAL

Las Vegas Sands Corp. and Sheldon G. Adelson,

Appellants
_____

Appeal from the United States District Court
for the District of New Jersey
(No. 2-14-cv-05835)
District Judge: Honorable William J. Martini

Argued: March 14, 2016

Before: FUENTES, CHAGARES and RESTREPO, <u>Circuit Judges</u>.

(Filed: April 12, 2016)

Robert L. Byer, Esq. [ARGUED]
Duane Morris
600 Grant Street
Pittsburgh, PA 15219

Brian J. Slipakoff, Esq.
Duane Morris
30 South 17th Street
Philadelphia, PA 19103

    <u>Attorneys for Appellants</u>

Laura R. Handman, Esq. [ARGUED]

Constance M. Pendleton, Esq.
Davis Wright & Tremaine
1919 Pennsylvania Street, N.W.
Washington, DC 20006
        Attorneys for Appellee

———————

OPINION[*]
———————

CHAGARES, Circuit Judge.

Sheldon Adelson and Las Vegas Sands Corporation ("LVSC") appeal the District

Court's denial of their motion to quash the subpoena served by appellee Kate O'Keeffe

upon Kirk Thorell of PricewaterhouseCoopers ("PwC"). For the reasons that follow, we

will affirm.

I.

We write solely for the parties and therefore recite only the facts necessary to our

disposition. O'Keeffe is a Hong Kong-based reporter who is employed by Dow Jones &

Company, Inc. to write for some of its publications, including the Wall Street Journal, the

Wall Street Journal Asia, and the Wall Street Journal Europe. She is currently the sole

defendant in a civil defamation action filed by Adelson in a Hong Kong court. Adelson's

defamation claim there involves an article O'Keeffe coauthored for the Wall Street

Journal Asia, which described Adelson as "foul-mouthed."[1] O'Keeffe's defense in that

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

[1] The article reported on a wrongful termination lawsuit filed by Steven Jacobs against
LVSC and its Macau, China subsidiary, Sands China Ltd. The sentence in the article that

2

lawsuit is based, in part, on the argument that the statement is "true in substance and fact." App. 66.

As part of this defense, O'Keeffe filed an <u>ex parte</u> application with the District Court for an order to issue a subpoena to Kirk Thorell, pursuant to 28 U.S.C. § 1782.[2] Thorell is a partner with PwC, which served as LVSC's auditor from 1988 to 2013. PwC resigned as LVSC's auditor in 2013, and O'Keeffe has suggested that the resignation was "reportedly due, at least in part, to 'personal tension' between Adelson and PwC and Adelson's 'challenging demeanor and demands on the auditors.'" O'Keeffe Br. 3. The subpoena requests the production of documents "referencing, describing or reflecting Adelson's use of foul or otherwise offensive language," App. 40, and includes a list of words to be used as search terms. The subpoena also seeks deposition testimony on "[a]ny instances in which Adelson used foul or otherwise offensive language" and "Adelson's demeanor." App. 37.

On September 30, 2014, the Magistrate Judge conditionally granted the <u>ex parte</u> application, but allowed Thorell and any party opposing O'Keeffe in the foreign

---

is at issue is: "In some ways, Mr. Jacobs, a 6-foot-5-inch tall Ivy League graduate who colleagues say rarely curses, couldn't be more different from Mr. Adelson — a scrappy, foul-mouthed billionaire from working-class Dorchester, Mass." Appendix ("App.") 47.

[2] Section 1782 provides that the "district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."

proceeding to seek relevant relief from the court. After the subpoena was served, Adelson and LVSC moved to quash. Both sides briefed the motion, and submitted conflicting declarations on the admissibility of the sought-after discovery in the Hong Kong litigation.[3] Neither Thorell nor PwC have challenged the subpoena.

On February 10, 2015, after briefing and oral argument, the Magistrate Judge denied Adelson and LVSC's motion to quash. Adelson and LVSC timely appealed to the District Court. On August 26, 2015, the District Court affirmed the Magistrate Judge's opinion and order. Adelson and LVSC timely appealed to our Court.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1782, and we have jurisdiction pursuant to 28 U.S.C. § 1291 to review a final decision of a district court. We review a District Court's denial of a discovery request under 28 U.S.C. § 1782 for an abuse of discretion. See In re Bayer AG, 146 F.3d 188, 191 (3d Cir. 1998). "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." NLRB v. Frazier, 966 F.2d 812, 815 (3d Cir. 1992) (quotation marks omitted).

III.

---

[3] The declaration submitted by Adelson and LVSC is of Malcolm Bernard Kemp, a Hong Kong-based solicitor uninvolved in the Hong Kong litigation. O'Keeffe offered the declaration of Kathryn Sara Hippolyte Sanger, a consultant for the law firm representing O'Keeffe in the Hong Kong litigation.

4

A court deciding a section 1782 application must first determine whether certain statutory requirements are met,[4] and if those requirements are satisfied, the Court may then consider other factors to determine whether to exercise its discretion to grant the application. Here the parties agree that O'Keeffe met the statutory requirements for discovery, but dispute whether the District Court properly exercised its discretion in granting the application and denying the motion to quash.

The Supreme Court has identified four factors that are relevant to this discretionary determination under section 1782: (1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004). Both the Magistrate Judge and District Court found that all of the Intel factors favored O'Keeffe in granting her application.

---

[4] The fundamental statutory requirements for a discovery subpoena under section 1782 are: (1) the person from whom discovery is sought resides in the district; (2) the request seeks the "testimony or statement" of a person or the production of a "document or other thing"; (3) the discovery is for use in proceedings before a foreign or international tribunal; and (4) the application is made by either a "foreign or international tribunal" or by an "interested party." 28 U.S.C. § 1782. O'Keeffe's application meets these statutory requirements.

A.

The first <u>Intel</u> factor is not in dispute by the parties, and weighs in O'Keeffe's

favor. Thorell is not a participant in the foreign litigation and is outside the foreign

tribunal's jurisdictional reach. <u>See</u> Adelson Br. 14; O'Keeffe Br. 12. Accordingly, the

District Court did not abuse its discretion in finding the first <u>Intel</u> factor favors O'Keeffe.

B.

The second <u>Intel</u> factor instructs courts to consider the nature of the foreign

tribunal, the character of the proceedings underway abroad, and the receptivity of the

foreign government or the court or agency abroad to U.S. federal court judicial

assistance. As to this determination, the District Court indicated that the party moving to

quash "must present authoritative proof that the foreign court would reject the evidence

obtained with the aid of Section 1782." App. 9. Citing to Second Circuit case law, the

District Court noted that examples of such authoritative proof include "'a forum

country's judicial, executive or legislative declarations that specifically address the use of

evidence gathered under foreign procedures.'" <u>Id.</u> (quoting <u>Euromepa S.A. v. R.</u>

<u>Esmerian, Inc.</u>, 51 F.3d 1095, 1100 (2d Cir. 1995)).[5] The District Court found that "the

---

[5] The parties do not dispute whether this is the correct legal standard. Indeed, the District Court's statement of law does comport with what we have previously indicated in <u>In re Bayer AG</u>: "Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application. In determining whether the foreign tribunal would take offense, the district court would be free, in the exercise of its discretion to consider any materials, typically statutes or case law from the foreign jurisdiction, that may be presented by the parties." 146 F.3d at 195.

6

record contains no authoritative proof that the Hong Kong court would be unreceptive to the District of New Jersey's assistance." App. 9. The District Court noted that "the record merely contains two differing interpretations of Hong Kong law from the parties' respective experts," that "district courts are discouraged from engaging in the interpretation of foreign law when conducting a Section 1782 analysis," and that "the Hague Evidence Convention is in effect between the United States and Hong Kong, which indicates that Hong Kong's courts are receptive to American judicial assistance." Id.

Adelson argues on appeal that the District Court erred in its analysis of this second factor because the "expert" testimony from O'Keeffe was supplied by her own attorney, and thus should have been "steeply discounted." Adelson Br. 15. However, as the Magistrate Judge noted, the conflicting declarations suggest that looking at either declaration would result in "an exercise in analyzing complex and ambiguous aspects of foreign law and deciding what might be admissible in a Hong Kong court, something that courts have repeatedly found inappropriate." App. 18.

Even if the District Court only considered the declaration submitted by Adelson and LVSC, the declaration is qualitatively different than the type of "authoritative proof" that a statute or regulation might provide. We cannot say that the Hong Kong statutes and regulations referred to in the declaration are clear regarding the particular evidence sought here. The submitted declaration simply provides one interpretation of the admissibility of the types of documents and testimony sought by O'Keeffe. As the Court of Appeals for the Second Circuit noted in Euromepa:

7

We think that it is unwise — as well as in tension with the aims of section 1782 — for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law. Although "[a] grant of discovery that trenched upon the <u>clearly established</u> procedures of a foreign tribunal would not be within section 1782," <u>John Deere Ltd. [v. Sperry Corp.</u>, 754 F.2d 132, 136 (3d Cir. 1985)] (emphasis added), we do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the "twin aims" of the statute.

51 F.3d at 1099-1100.

We have never required district courts to determine whether <u>particular</u> evidence would be admissible in a foreign court. Instead, <u>Intel</u> suggests the inquiry is more generally the receptivity to "U.S. federal-court judicial assistance." 542 U.S. at 264. Here, the District Court noted that Hong Kong is a signatory to the Hague Evidence Convention, and thus the Hong Kong court is likely "receptive to American judicial assistance." App. 9. <u>See</u> <u>also</u> <u>In re Servicio Pan Americano de Proteccion</u>, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("Venezuela has indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation."). This result is also in line with the purposes of section 1782. We have previously noted that "Congress enacted section 1782 to further the following goals: 'facilitating the conduct of litigation in foreign tribunals, improving international cooperation in litigation, and putting the United States into the leadership position among world nations.'" <u>Bayer AG v. Betachem, Inc.</u>, 173 F.3d 188, 191 (3d Cir. 1999) (citation and alterations omitted). By granting O'Keeffe's application, after having noted Hong Kong's status with respect to the Hague Evidence Convention, the District Court acted in such a way as to facilitate

8

litigation in the foreign tribunal and improve cooperation between the United States and Hong Kong. Therefore, the District Court did not abuse its discretion in finding the second Intel factor favors O'Keeffe.

C.

The third Intel factor is whether the subpoena request conceals an attempt to circumvent foreign proof-gathering restrictions. As to this factor, Adelson and LVSC claim that O'Keeffe did not apply for a letter rogatory in Hong Kong because such relief would likely have been denied. On this point, the District Court held that "Section 1782 applicants are not required to apply for letters rogatory through the forum nation before making a Section 1782 application." App. 10.

We agree. We have never held that an applicant must seek discovery relief in the foreign forum first. For example, in In re Bayer AG, we rejected the argument that an application should be denied when the applicant could have gone to the foreign court to seek production of the materials before coming to the United States and invoking section 1782. See 146 F.3d at 195-96. See also John Deere, 754 F.2d at 136 ("We do not believe that Congress intended litigants interested in foreign proceedings to resort to section 1782 only upon an adequate showing that they could obtain letters rogatory from the foreign forum. Such a reading would virtually nullify the statutory provision that 'interested persons' may apply for discovery orders."). Indeed, the statutory language of section 1782 provides that an application could be granted "pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person. . . ." 28 U.S.C. § 1782(a) (emphasis added). Requiring district courts

9

to consider whether the relief could have been achieved through a letter rogatory would not be in line with the statutory text clearly providing that, as an alternate to a letter rogatory, "any interested person" could apply for such relief from a district court. Therefore, we hold that the District Court did not abuse its discretion in finding that the third Intel factor favors O'Keeffe.

D.

The fourth Intel factor is whether the application contains unduly intrusive or burdensome requests. Adelson and LVSC argue that the subpoena contains both. The District Court, however, found nothing in the record indicating the request was either unduly burdensome or intrusive. App. 10. Additionally, the District Court indicated that Adelson and LVSC would not have standing to challenge the request as burdensome, noting that the burden falls on Thorell (or PwC) — who has not challenged the subpoena. Id. As to whether the request is unduly intrusive, the District Court noted that there is no accountant-client privilege under federal law, see, e.g., Couch v. United States, 409 U.S. 322, 335 (1973), and that "any concerns about the potential disclosure of confidential information can be alleviated through protective orders." App. 10.

The District Court did not abuse its discretion in its consideration of this factor. The District Court rightfully noted that Thorell has not challenged the subpoena, which bears on whether it might be unduly burdensome. And as to whether the subpoena would be unduly intrusive, the District Court acted within its discretion in finding that confidentiality concerns could be adequately addressed by protective orders or redactions.

10

E.

Adelson and LVSC also argue that O'Keeffe's application for a subpoena is not relevant to the Hong Kong litigation and is an improper "fishing expedition" as demonstrated by the "poor, unexplained fit between the subject of the Hong Kong litigation and the proffered basis for the Subpoena." Adelson Br. 26-27. Addressing this argument, the Magistrate Judge found: "While Movants refer to the discovery requests as a fishing expedition, it seems clear that the discovery sought could bear on the question of whether Mr. Adelson is 'foul-mouthed' for purposes of the Hong Kong lawsuit. In other words, at least under the Federal Rules of Civil Procedure, if the information sought exists, and is within Mr. Thorell's possession, it would be relevant. See Fed. R. Civ. P. 26(b)." App. 22.

Adelson and LVSC point to In Matter of Application of O'Keeffe, No. 15-mc-80651, 2015 WL 5092806 (S.D. Fl. Aug. 27, 2015), in support of their argument. In O'Keeffe, a magistrate judge granted Adelson and LVSC's motion to quash a separate subpoena application by O'Keeffe. Although the magistrate judge explicitly found that all the Intel factors favored O'Keeffe, he held that the application was not relevant under the Federal Rules of Evidence (as it was essentially "ancient discovery" regarding a short-lived professional relationship from 1989 or 1990), that it was an "improper fishing expedition" (because there was "no real proof that any fish are present" with only a chance she may uncover "outdated and ancient information"), that it was a "vehicle for harassment" (because the search terms would reveal "inflammatory, racist, and wholly

11

irrelevant requests"), and that the request was cumulative (because of the similar requests in Nevada and New Jersey courts). Id. at *8-10.

The facts before that court can be distinguished from those here.[6] The Florida case involved a subpoena application for discovery regarding a short-lived contractual dispute that occurred in 1989 and 1990. Here, on the other hand, the subpoena application seeks more recent communications regarding a long-standing business relationship. O'Keeffe has also indicated the basis for her belief that such language might be found through discovery — a Wall Street Journal news article reporting on the termination of the professional relationship between PwC and Adelson. Nor is O'Keeffe's application here a vehicle for harassment because it includes search terms that are "inflammatory" or "racist." See Adelson Reply Br. 16. The nature of the search terms is precisely why they are relevant for her defense: they directly touch on whether someone might be considered "foul-mouthed" for purposes of the Hong Kong litigation. Accordingly, we disagree with Adelson and LVSC's arguments regarding relevance and whether the application for a subpoena constitutes an improper fishing expedition.

IV.

For the foregoing reasons, we will affirm the District Court's order denying Adelson and LVSC's motion to quash the subpoena.

---

[6] Also of note, the parties have represented to the Court that O'Keeffe is challenging the magistrate judge's decision in O'Keeffe.

12