**In re REQUEST FOR ASSISTANCE FROM MINISTRY OF LEGAL AFFAIRS OF TRINIDAD AND TOBAGO**

Petition of Joseph AZAR.

No. 86–6011.

United States Court of Appeals, Eleventh Circuit.

July 7, 1988.

Jeffrey H. Kay, Ft. Lauderdale, Fla., Jon May, Miami, Fla., for appellant.

Theodore Klein, Fine, Jacobson, Schwartz, et al., Joanne M. Rose, Miami, Fla., for amicus curiae.

---

Leon B. Kellner, U.S. Atty., David Lichter, Jeanne M. Mullenhoff, Linda Collins Hertz, Andrea M. Simonton, Asst. U.S. Attys., Miami, Fla., for appellee.

Before FAY and VANCE, Circuit Judges, and HOFFMAN[*], Senior District Judge.

FAY, Circuit Judge:

Joseph Azar challenges the district court's refusal to quash a subpoena that it had directed at Azar's bank, the Union Bank of Florida. The district court issued the subpoena pursuant to 28 U.S.C. § 1782(a) (1982)[1], in response to a request by the Attorney General and Minister of Legal Affairs in Trinidad and Tobago ("Minister of Legal Affairs"). This appeal presents an issue of first impression—whether section 1782 requires that a proceeding be pending before a federal court may grant judicial assistance to a foreign official. We hold that 28 U.S.C. § 1782 does not impose such a requirement and affirm.

## I. BACKGROUND

On December 31, 1985, the Minister of Legal Affairs of Trinidad and Tobago asked the United States Attorney General to help obtain authenticated copies of the bank records of Joseph Azar. The Minister of Legal Affairs sought the records in connection with a criminal investigation of Trinidad and Tobago nationals involved in violations of the Exchange Control Act. See Ch. 79:50 Laws of Trinidad and Tobago. The Department of Justice moved the district court to issue a subpoena for the records under section 1782. On July 11, 1986, the district court granted the *ex parte* request for a subpoena of the bank records. Azar immediately sought to quash the subpoena on the grounds that section 1782 requires that a proceeding be pending in the foreign country. After carefully scrutinizing the request, the district court denied the motion to quash. *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 648 F.Supp. 464 (S.D.Fla.1986). This appeal followed.

## II. HISTORY

To aid us in resolving the issues presented by this case, we must first consider the history of section 1782. The Act of March 2, 1855 first authorized federal courts to assist foreign tribunals.[2] This statute granted federal courts the power to compel the testimony of witnesses in order to assist foreign courts. *In re Letter Rogatory from the Justice Court, District of Montreal, Canada*, 523 F.2d 562, 564 (6th Cir. 1975). The passage of the Act of March 3, 1863, however, soon restricted this first statute.[3] The 1863 Act allowed the United

---

[*] Honorable Walter E. Hoffman, Senior U.S. District Judge Eastern District of Virginia, sitting by designation.

1. Section 1782(a) reads as follows:

 The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing *for use in a proceeding* in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal *or upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court....

 A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege. (emphasis added).

2. Section 2 of the Act reads:

 And be it further enacted, That where letters rogatory shall have be [sic] addressed, from any court of a foreign country to any circuit court of the United States, and a United States commissioner designated by said circuit court to make the examination of witnesses in said letters mentioned, said commissioner shall be empowered to compel the witnesses to appear and depose in the same manner as to appear and testify in court.

 Act of March 2, 1855, ch. 140, § 2, 10 Stat. 630.

3. Section 1 of this Act states:

 Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the testimony of any witness residing within the United States, to be used in any suit for the recovery of money or property depending in any court in any foreign country with which the United

States courts to obtain testimony to assist foreign courts only if such testimony was for use in suits (1) which pertained to the recovery of money or property, (2) which were pending in a foreign country with which the United States was at peace, and (3) in which the government of the foreign country was a party or had an interest. This 1863 statute, with its limitations, remained relatively unchanged until 1948.

Beginning in 1948, Congress enacted several amendments that broadened the scope of the statute. The 1948 amendment deleted the requirement that the foreign government be a party or have an interest in the suit.[4] Congress also changed the limitation that the "suit [be] for the recovery of money or property" and eventually only required that the action be a "judicial proceeding." *See* Act of May 24, 1949, ch. 139, § 93, 63 Stat. 103. During this time, however, Congress retained the requirement that the judicial proceeding be pending in a foreign country with which the United States was at peace.

In 1964, Congress enacted the most recent amendments to section 1782. These modifications marked a significant departure from Congress' cautious approach to international judicial assistance. *Letter Rogatory from Montreal, Canada,* 523 F.2d at 565. Congress adopted, without objection, a set of proposals submitted by the Commission on International Rules of Judicial Procedure which revised section 1782.[5] The legislative history shows that the purpose behind the proposals was to encourage other nations to follow the lead of the United States and to adjust their procedures in order to improve practices of international cooperation in litigation.[6]

These amendments broadened section 1782's ability to provide assistance in several ways. First, while the previous incarnations of section 1782 only allowed a district court to assist in the taking of depositions and testimony, the 1964 changes enabled federal courts to assist in obtaining documents and other tangible evidence. Second, to permit district courts to assist in proceedings before foreign investigating magistrates and administrative decisionmakers, Congress only required that the evidence be for use in a "foreign tribunal" rather than for use in a "court."[7] Third,

---

States are at peace, and in which the government of such foreign country shall be a party or shall have an interest, may be obtained, to be used in such suit. If a commission or letters rogatory to take such testimony shall have been issued from the court in which said suit is pending, on producing the same before the district judge of any district where said witness resides or shall be found, and on due proof being made to such judge that the testimony of any witness is material to the party desiring the same, such judge shall issue a summons to such witness requiring him to appear before the officer or commissioner named in such commission or letters rogatory, to testify in such suit....

Act of March 3, 1863, ch. 95, § 1, 12 Stat. 769–70.

4. The applicable section of the 1948 Act declares:

The deposition of any witness residing within the United States to be used in any civil action pending in any court in a foreign country with which the United States is at peace may be taken before a person authorized to administer oaths designated by the district court of any district where the witness resides or may be found....

Act of June 25, 1948, ch. 646, § 1782, 62 Stat. 949.

5. S.Rep. No. 1580, 88th Cong., 2d Sess. 1, *reprinted in* 1964 U.S.Code Cong. & Admin.News 3782 [hereinafter 1964 U.S.Code Cong. & Admin.News]; Smit, *International Litigation Under the United States Code,* 65 Colum.L.Rev. 1015, 1017 (1965). Congress had created the Commission to study and evaluate those provisions of the federal code that related to international judicial assistance. The Commission's goal was to revise the law to provide "[w]ide judicial assistance ... on a wholly unilateral basis." *Letter Rogatory from Montreal, Canada,* 523 F.2d at 565 (quoting Amram, *New Developments in International Judicial Assistance in the United States of America,* 32 J.B. Ass'n of D.C. 24, 28 (1965)).

6. *See* Letter from Rep. Oscar Cox, Chairman of Commission on International Rules of Judicial Procedure, to John McCormack, Speaker of the House, (May 28, 1963), *reprinted in* 1964 U.S. Code Cong. & Admin.News at 3792–94.

7. The legislative history explains why Congress switched from the word "court" to "tribunal."

A rather large number of requests for assistance emanate from investigating magistrates. The word "tribunal" is used to make it clear that assistance is not confined to proceedings before conventional courts. For example, it is intended that the court have discretion to

the 1964 amendments allowed, for the first time, an "interested person" as well as a foreign tribunal to request judicial assistance. The legislative history stated that an "interested person" can be a "person designated by or under a foreign law, or a party to the foreign or international litigation." 1964 U.S.Code Cong. & Admin.News at 3789. Hans Smit, the reporter to the Commission that drafted the proposals which Congress adopted, stated that the term "interested person" included foreign officials as well as actual litigants. Smit, *supra* note 5, at 1027. Finally, Congress replaced the requirement that the assistance must be for use in "any judicial proceeding *pending* in any court in a foreign country" with the requirement that the assistance be used "in a proceeding in a foreign or international tribunal." This change dropped the word "pending" from the statute.[8]

In sum, the history of section 1782 reflects a congressional desire to increase the power of district courts to respond to requests for international assistance. *In re Letters Rogatory from the Tokyo District, Tokyo, Japan,* 539 F.2d 1216, 1218 (9th Cir.1976). The purpose of the 1964 amendments was to broaden prior law and permit federal courts to assist bodies of a quasi-judicial or administrative nature and foreign investigating magistrates. Through these amendments, Congress reaffirmed the inherent authority of the United States courts to grant international judicial assistance. *See* 1964 U.S.Code Cong. & Admin. News at 3785. By taking the initiative in foreign cooperation, Congress also attempted to stimulate reciprocity. *John Deere*

*Ltd. v. Sperry Corp.,* 754 F.2d 132, 135 (3rd Cir.1985). Finally, Congress left the district court with the discretion to decide whether to honor requests for assistance. *Letters Rogatory from Tokyo, Japan,* 539 F.2d at 1219.

## III. ANALYSIS

Since Congress has given the district courts broad discretion in granting judicial assistance to foreign countries, we may overturn a district court's grant of such assistance only if it is an abuse of discretion. *See In Re Request for Judicial Assistance from the Seoul District Criminal Court, Seoul, Korea,* 555 F.2d 720, 724 (9th Cir.1977); *see also United States v. Silverman,* 745 F.2d 1386, 1397 (11th Cir. 1984) (district court must have abused its discretion to reverse an order sustaining a subpoena). Azar's principal contention is that section 1782 removes the district court's discretion to grant Trinidad and Tobago's Minister of Legal Affairs any assistance because section 1782 still requires that a proceeding currently be pending. Azar contends that the legislative history supports his view.

### A. *The Pending Requirement*

■ Azar concedes that the 1964 amendments eliminated the word "pending" and broadened the ability of the district court to grant assistance. When the legislature deletes certain language as it amends a statute, it generally indicates an intent to change the meaning of the statute. *United States v. Canadian Vinyl Industries,* 555 F.2d 806, 810, 64 CCPA 97 (1977); 1A

grant assistance when proceedings are pending before investigating magistrates in foreign countries. In view of the constant growth of administrative and quasi-judicial proceedings all over the world, the necessity for obtaining evidence in the United States may be as impelling in proceedings before a foreign administrative tribunal or quasi-judicial agency as in proceedings before a conventional court. Subsection (a) therefore provides the possibility of U.S. judicial assistance in connection with all such proceedings. 1964 U.S.Code Cong. & Admin.News at 3788 (citations omitted).

**8.** The 1964 amendments also eliminated the requirement that the assistance be rendered to a

court in a "foreign country with which the United States is at peace." The legislative history states that, if the United States is at war, the peace requirement is unnecessary since the Trading With the Enemy Act, 50 U.S.C.App. §§ 1–44 (1982), would forbid any assistance to the enemy. 1964 U.S.Code Cong. & Admin. News at 3789. The legislative history also suggests that if relations are strained between the United States and the foreign country then the district court is to exercise its discretion by "tak[ing] into account the nature and attitudes of the country from which the request emanates and the character of the proceedings in that country." 1964 U.S.Code Cong. & Admin.News at 3788.

Singer, *Sutherland Statutory Construction*, § 22.01 (4th Ed.1984). Indeed, when words of plain meaning are excised, the deletion of such language "almost compels the opposite result." *Chertkof v. United States*, 676 F.2d 984, 987 (4th Cir.1982). We believe that Congress' elimination of the word "pending" almost compels us to conclude the "opposite result"—that a pending proceeding is not absolutely necessary. We will not treat Congress' deletion of the word "pending" as a mistake or mere accident. Our belief is supported by Hans Smit who wrote, "It is not necessary, however, for the proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually used in such a proceeding." Smit, *supra* note 5, at 1027.

The result of one Ninth Circuit case indicates that a pending proceeding is not always necessary to a grant of assistance. In *Letters Rogatory from Tokyo, Japan*, 539 F.2d 1216, the Tokyo District Prosecutor's Office asked the Tokyo District Court to request the assistance of a United States court in obtaining depositions for use "in criminal investigations and *possible future* criminal trials in Japan." *Id.* at 1217 (emphasis added). The Ninth Circuit overlooked the lack of any pending criminal proceeding and decided that, since the request was not " 'unrelated' to 'judicial or quasi-judicial controversies,' " it had to affirm the federal district court's grant of assistance. *Id.* at 1219. This decision demonstrates that the determination to grant assistance turns not on whether the proceeding is pending but on whether the requested evidence will likely be of use in a judicial proceeding.

Azar, however, points to the use of the term "litigant" in the legislative history to argue that Congress only meant to provide assistance to an "interested person" who is presently involved in a pending proceeding. *See* 1964 U.S.Code Cong. & Admin.News at 3788. This reliance is misplaced. First, the only requirement specifically mentioned in the legislative history is that the assistance must be "in connection with" a proceeding. *Id.* Second, we believe that Congress did not use the word "litigant" to encompass all types of "interested persons," but used the word as a common example of an "interested person." An "interested person," as stated earlier, can also be a foreign official. While a private individual may need to be a litigant in a pending proceeding in order to be an "interested person," a foreign official properly designated under foreign law may fall within the definition of "interested person" even when a proceeding is not pending at the time of the request. Therefore, the word "litigant" in the legislative history does not restrict a request for assistance from a foreign official to "pending" proceedings.[9]

## B. *Abuse of Discretion*

 In this case it is clear that the district court did not abuse its discretion. First, the district court properly concluded that the Minister of Legal Affairs was an interested person as contemplated by the statute. Under the law of Trinidad and Tobago, the Minister of Legal Affairs is legally responsible for the enforcement of the Exchange Control Laws. Because he has this legal responsibility, the Minister of Legal Affairs is an "interested person" under section 1782.[10]

Second, the evidence is "for use in a proceeding" as required by section 1782.

---

9. A request for assistance from an international tribunal will normally occur only when the tribunal is considering a proceeding before it. Consequently, when discussing requests emanating from international tribunals, the legislative history uses the phrases "pending before investigating magistrates" and "proceedings before" administrative tribunals. 1964 U.S.Code Cong. & Admin.News at 3788 (quoted *supra* note 7). These phrases do not indicate, however, that a proceeding must be pending in order for a district court to grant a request for assistance from an "interested person" such as a foreign official.

10. This court recognizes that there are several cases which would tend to indicate that the Minister of Legal Affairs is not classified as a "foreign tribunal" under section 1782. *See Fonseca v. Blumenthal*, 620 F.2d 322 (2d Cir. 1980) (per curiam) (Superintendent of Exchange Control of Columbia); *In re Letters Rogatory Issued by the Director of Inspection of the Government of India*, 385 F.2d 1017 (2d Cir. 1967) (Indian Income Tax Officer); *In re Letters of Request to Examine Witnesses from the Court of Queen's Bench for Manitoba, Canada*, 59 F.R.

When the Minister of Legal Affairs requested the assistance, he set forth the documents he desired, the information he expected to find, and the reason he would use the documents in the eventual proceeding. The district court noted that the Minister of Legal Affairs had requested the production of the documents in a particular form to ensure their admissibility in the future criminal proceeding. Also, the Minister of Legal Affairs had offered to pay certain bank personnel to travel to Trinidad and Tobago and testify concerning the authenticity of the records. All of this suggests that a proceeding is imminent. On the other hand, Azar has provided no evidence suggesting that the Minister of Legal Affairs is seeking the records for some reason other than "for use in a proceeding." Therefore, the district court could reasonably conclude that the records would be used in a criminal trial.

Finally, the records sought are discoverable under the laws of Trinidad and Tobago. While a district court generally should not decide whether the requested evidence will be admissible in the foreign court, *see John Deere*, 754 F.2d at 136, the district court must decide whether the evidence would be discoverable in the foreign country before granting assistance. *See id.; In re Court of the Commissioner of Patents for the Republic of South Africa*, 88 F.R.D. 75, 77 (E.D.Pa.1980). In this case, the Central Bank of Trinidad and Tobago has the authority to request the bank records of any customer's account when it suspects violations of the Exchange Control Laws.[11] The Minister of Legal Affairs works closely with the Central Bank and could have obtained the records through the Central Bank if Azar's bank was within the Central Bank's jurisdiction. Azar has not indicated any privilege recognized un-

der Trinidad and Tobago laws that would forbid the discovery of his bank records.[12]

## IV. CONCLUSION

Congress has given the district courts a great responsibility to determine whether to grant judicial assistance in foreign litigation. To prevent abuse, the district judge should carefully examine and give thoughtful deliberation to any request for assistance submitted by an "interested person" before a judicial proceeding has begun. The district judge should satisfy himself that a proceeding is very likely to occur. If the judge doubts that a proceeding is forthcoming, or suspects that the request is a "fishing expedition" or a vehicle for harassment, the district court should deny the request. In this case the district court concluded that a proceeding was probable and properly assisted the Minister of Legal Affairs by ordering the production of the bank records.

AFFIRMED.

---

D. 625 (N.D.Calif.) (special Manitoba, Canada Commission of Inquiry), *aff'd,* 488 F.2d 511 (9th Cir.1973). That the Minister of Legal Affairs lacks adjudicatory powers and is not a tribunal, however, has no bearing on his status as an "interested person."

**11.** *See* Exchange Control Act of Trinidad and Tobago, Fourth Schedule, Part I, § 1 and Part V, § 39.

**12.** The release of the bank records also will not violate any United States law or privilege. The records will be released in conformance with the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–22 (1982).