**In the Matter of the Application of Olga SUMAR for an Order Designating a Commissioner to Take Depositions for Use in a Foreign Country, to Wit, Argentina, In a Proceeding There Pending for Criminal Charges Wherein Aida Sumar Pacha is the defendant for fraud and larceny offenses.**

No. M8–85.

United States District Court,
S.D. New York.

Dec. 30, 1988.

Gallager & Gosseen, Mineola, N.Y. (Fredrick B. Simpson, of counsel), for petitioner.

Coudert Brothers, (Evan W. Gray, Mark D. Lebow, of counsel), Sherman & Sterling, New York City (John J. Madden, Jr., Randall J. Sunshine, Dana M. Franklin, of counsel), for respondents.

LEISURE, District Judge:

This motion is brought by petitioner Olga Sumar to compel Citibank, N.A. ("Citibank") to produce certain documents and a witness for a deposition pursuant to an Order issued by Judge Broderick and a subpoena, both dated March 11, 1988. Petitioner also seeks the costs of bringing this motion. The deposition and document production were ordered pursuant to a letter rogatory issued by an Argentine court. The Argentine court requested that the Federal District Court of the Southern District of New York assist it in obtaining such discovery.

## FACTUAL BACKGROUND

Olga Sumar ("Olga") is one of six children of Solomon and Sara Sumar (the "Sumars"), both of whom are deceased. Solomon Sumar was an industrialist of wealth in Argentina. Upon Solomon Sumar's death, his widow, Sara Sumar, received one half of his estate. Affidavit of Fredrick B. Simpson, Esq., sworn to on November 7, 1988 ("Simpson Aff."), ¶ 2. Allegedly, Olga's mother transferred a substantial portion of her assets to Citibank, N.A. in New York. These assets were allegedly not included in Sara Sumar's estate due to the fraud of Olga Sumar's siblings. Simpson Aff. ¶ 3. There is a pending criminal action for fraud and larceny against Aida Sumar Pacha ("Aida Sumar"), Olga's sister, based upon this alleged concealment and transfer of funds. Affidavit of Mark D. Lebow, Esq., sworn to on December 16, 1988 ("Lebow Aff.") ¶ 12. Additionally, there is a civil action in Argentina, commenced by Olga Sumar, based upon the same underlying facts.

Respondents assert that the petitioner commenced two prior proceedings in the Supreme Court, New York County. One action was against Citibank for a permanent injunction regarding the operation of her siblings' accounts at Citibank; the second action was against Olga's siblings based on the same underlying facts. Both suits were discontinued without prejudice. Lebow Aff., Exhibit G. As a condition precedent to the settlement in the suit against Olga Sumar's siblings, Olga's then attorneys were allegedly furnished with certain information by her siblings relating to their accounts at Citibank. Affidavit of Randall J. Sunshine, Esq., sworn to on December 15, 1988 ("Sunshine Aff."), ¶ 3.

Petitioner previously instituted proceedings before this Court, under a letter rogatory dated October 11, 1985, in connection with a civil proceeding in Argentina. Petitioner obtained both an order and a deposition subpoena. Lebow Aff., Exhibits H, I, and J. Subsequently, the Argentine court issued an additional letter rogatory dated April 28, 1986, in which it withdrew its information request due to the fact that the information had been stipulated to between the parties. Lebow Aff. ¶ 11 and Exhibit K.

In a letter rogatory dated May 14, 1986 (the "1986 Exhorto"), the Argentine court requested the assistance of this Court in the criminal action against Aida Sumar. See Lebow Aff., Exhibit L. On or about March 11, 1988, petitioner moved ex parte for an order designating a Commissioner to take the deposition of Citibank and for a subpoena duces tecum, pursuant to 28 U.S.C. § 1782 and the 1986 Exhorto. Petitioners motions were granted and the subpoena and Order were issued.

Petitioner alleges that the subpoena and Order were served upon Citibank on March 15, 1988. Simpson Aff. ¶ 8. Citibank admits that the subpoena was served. Sunshine Aff. ¶ 6. On March 14, 1988 petitioner attempted to serve the above documents on Mark Lebow, Esq., attorney for Olga

Sumar's siblings. Simpson Aff. ¶ 8. Service was refused, but a copy of the subpoena and Court Order were then mailed with a cover letter to Lebow. Simpson Aff. ¶ 8.

The subpoena had a return date of April 1, 1988. Pursuant to a telephone conversation between Fredrick Simpson, Esq., counsel for Olga, and Randall J. Sunshine, Esq., counsel for Citibank[1], the matter was adjourned to April 15, 1988. The counsel agreed that the documents would be produced but that the dispute over whether Citibank was required to produce a deposition witness would be held in abeyance without prejudice to either side. Sunshine Aff. ¶ 6. Subsequently, the document production was adjourned until April 22, 1988. On April 19, 1988 Sunshine informed Simpson that Citibank had been contacted on behalf of Olga's siblings and the Sumar siblings objected to Citibank producing the documents scheduled to be produced on April 22, 1988. Sunshine Aff. ¶ 7. On April 21, 1988, Sunshine sent a letter to Simpson stating Citibank's objections to the subpoena and Court Order. In a conversation later that day, Simpson allegedly stated that the subpoena was duly issued and valid and that he would appear on the next day for the document production. Simpson Aff. ¶ 10. Sunshine stated that it was his opinion that the two had agreed to adjourn the April 22, 1988 document production. Simpson Aff. ¶ 10. On April 22, 1988, Simpson appeared at the offices of Sherman & Sterling for the purpose of reviewing the documents as set forth in the letter rogatory. The documents were not produced.

Subsequently, in order to counter the objections raised by Citibank and the Sumar siblings that the 1986 Exhorto was "stale," counsel for Olga obtained a letter rogatory dated June 6, 1988 (the "1988 Exhorto") extending the original 1986 Exhorto. *See* Simpson Aff., Exhibit E.

On November 7, 1988, Olga Sumar brought this motion, pursuant to Fed.R. Civ.P. 37 and 45(e), seeking to compel Citibank to produce certain documents and a witness for deposition as set forth in the Order and subpoena of this Court dated March 11, 1988 (Broderick, J.), and for the costs associated with the making of this motion, including attorneys' fees.

## DISCUSSION

### 1. *Subject Matter Jurisdiction*

Section 1782 of Title 28 of the United States Code reads, in relevant part:

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be give or the document or other thing be produced before a person appointed by the court.... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."

The applicability of the Federal Rules of Civil Procedure is echoed by the regulations governing proceedings under § 1782. *See* 22 C.F.R. § 92.67(a); *see also* Civil Rule 16 of this Court. Respondents argue that the Federal Rules of Criminal Procedure should be applied to petitioner's efforts to compel discovery under Section 1782 because of the criminal nature of the

---

1. Citibank is represented in this action by Sherman & Sterling, Randall J. Sunshine, Esq. of counsel, for so much of the motion as seeks an order pursuant to Federal Rules of Civil Procedure 37(a)(4) and (b) "requiring Citibank, N.A. and/or its attorneys to pay the reasonable expenses, including attorneys' fees, of this motion." Papers in opposition to so much of the motion as seeks an order pursuant to Federal

Rules of Civil Procedure 37 and 45(e) compelling Citibank, as a non-party witness, to appear for a deposition and to produce certain documents were submitted on behalf of Citibank and Aida Sumar by the Coudert Brothers law firm, Mark D. Lebow, Esq. of counsel, the attorneys in the United States for Olga Sumar's siblings.

action instituted by petitioner against Aida Sumar in Argentina. No authority has been cited for this proposition. The criminal nature of the Argentine investigation does not change the explicit direction of Section 1782. *See In re Request for International Judicial Assistance from Brazil ("Brazil"),* 687 F.Supp. 880 (S.D.N.Y.1988). The Federal Rules of Civil Procedure will be applied to petitioner's motion to compel.

As a threshold issue the Court must determine whether the subpoenaed documents and deposition are "for use in a proceeding in a foreign or international tribunal." Section 1782 does not authorize a District Court to execute letters rogatory whenever requested by a foreign country or a party there. *In the Matter of Letters Rogatory Issued by Director of Inspection of the Government of India ("India"),* 385 F.2d 1017, 1020 (2d Cir.1967). Rather, it must be made to appear that the documents and depositions are sought for use in a "proceeding" in a "tribunal" within the meaning of Section 1782 to render letters rogatory enforceable. *See Fonseca v. Blumenthal,* 620 F.2d 322 (2d Cir.1980); *Brazil,* 687 F.Supp. 880 (S.D.N.Y.1988).

"[Section] 1782 was not intended to and does not authorize the United States Courts to compel testimony on behalf of foreign governmental bodies whose purpose is to conduct investigations unrelated to judicial or quasi-judicial controversies." *Brazil, supra* at 885 (*quoting In re Letters of Request to Examine Witnesses from the Court of Queen's Bench for Manitoba, Canada,* 488 F.2d 511, 512 (9th Cir.1973)). Therefore, it has been held that presentation to a United States District Court of letters rogatory by an officer of a foreign government's executive branch does not fall within § 1782. *Fonseca,* 620 F.2d 322 (2d Cir.1980); *India,* 385 F.2d 1017 (2d Cir.1967). The term "tribunal" requires there be an impartial adjudication and that

there be no "institutional interest in a particular result." *India,* 385 F.2d at 1020. There must be a meaningful degree of separation "between the prosecutorial and adjudicative function" in the underlying proceeding. *Brazil,* 687 F.Supp. at 885.

Respondents contend that the subpoena seeks documents for use in a "private criminal action" and that this does not meet the requirements for subject matter jurisdiction under Section 1782. It is well recognized that § 1782 extends to the request of a foreign court for judicial assistance in a pending criminal prosecution against an individual. *See In re Letter Rogatory from the Justice Court, District of Montreal, Canada,* 523 F.2d 562 (6th Cir.1975); *Brazil, supra* at 886. Petitioner initiated her criminal action against her sister in 1982 as a *querellante,* which respondents assert is akin to a private criminal prosecutor. However, the issue does not revolve around the status of Olga Sumar but rather the type of proceeding before the foreign tribunal. The mere fact that the criminal action in question was commenced as a *querellante* does not disturb the adjudicative function of the Argentine court or affect petitioner's standing to request compliance with the letter rogatory under 28 U.S.C. § 1782. The 1986 Exhorto clearly states "[t]hat there is now pending in this National Court of First Instance on Trial Criminal Causes Nbr. 12 of the Federal Capital of the Argentine Republic ... pursued for criminal charges wherein Olga Sumar Pacha is plaintiff and Aida Sumar Pacha is defendant for larceny and fraud offenses...." Lebow Aff., Exhibit L. Respondents do not deny that there is a pending criminal action against Aida Sumar before an Argentine court.[2] There is a pending criminal matter in which the evidence sought will be used.

Moreover, a pending proceeding is not always necessary to a grant of assistance.

---

2. The Court notes that respondents' contention that the subpoena and Order should not be enforced because the underlying letter rogatory on which it is based is "stale" is groundless. Respondents cite no authority for this proposition but the Court assumes the objection is aimed at the allegation that the underlying action is dormant. The Court, however, finds no

evidence in the record, aside from the bald assertion of respondents' attorneys to this effect. The mere fact that the underlying Exhorto was signed in 1986 is insufficient, in and of itself, to establish the letter rogatory is now stale. Moreover, the 1988 Exhorto moots respondents' contention in this regard.

*See, e.g., In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago ("Trinidad and Tobago"),* 848 F.2d 1151 (11th Cir.1988). The determination to grant assistance turns not on whether the proceeding is pending but on whether the requested evidence will likely be used in a judicial proceeding. *Id.* at 1155. Respondents have provided no evidence that the records and deposition are sought for some reason other than for use in a judicial proceeding.[3] *See, Id.* at 1156.

■ The Court concludes that the record demonstrates the evidence is sought for use in a pending judicial proceeding and the adjudicative function of the Argentine court has been demonstrated with sufficient clarity. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1782.

## 2. *Standing*

■ Petitioner contends that Aida Sumar does not have standing to oppose petitioner's motion. However, in *In the Matter of Letters Rogatory Issued by Director of Inspection of Government of India,* 385 F.2d 1017 (2d Cir.1967), the Court reversed the District Court's order upon appeal by the foreign citizen aggrieved by the order authorizing assistance to the foreign authorities. Both the Second Circuit and the District Court evidently considered that a foreign citizen aggrieved by an order under Section 1782 has standing to oppose the provision of judicial assistance to foreign authorities thereunder. *Accord In re Letter Rogatory from Justice Court, District of Montreal,* 523 F.2d 562, 563–64 (6th Cir.1975); *Brazil,* 687 F.Supp. 880, 887 (S.D.N.Y.1988). None of the authorities cited by petitioner on the issue of standing involve Section 1782 and therefore the peti-

tioner's contention that defendant Aida Sumar does not have standing to oppose this motion is without merit.

## 3. *Service of the Subpoena and Timeliness of Objections*

Under Fed.R.Civ.P. 45(c), "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and by tendering to. that person the fees for one day's attendance and the mileage allowed by law." A party must object to a subpoena for taking depositions within ten days from the date of service, or on or before the time specified in the subpoena for compliance if such time is less than 10 days. Fed.R.Civ.P. 45(d)(1). If objection is timely made, "the party serving the subpoena shall not be entitled to inspect and copy the materials except pursuant to an order of the court from which the subpoena was issued." Fed.R.Civ.P. 45(d)(1). Objections to a subpoena duces tecum must be "made promptly and in any event at or before the time specified in the subpoena for compliance therewith...." Fed.R.Civ.P. 45(b).

Respondents contend that there is no proof of proper service in the record and that "petitioner has not even alleged that it has tendered fees to Citibank for the attendance of a witness, and it appears that no such tender was made."[4] Respondents' Memorandum in Opposition at 22–23. However, the subpoena and Order served on Citibank on March 14, 1988 were duly filed, with proof of both service and the tendering of fees, with the Clerk of this Court. As Citibank concedes that the subpoena was served, Sunshine Aff. ¶ 6, and its only concern was the asserted lack of proof of tendering of the required fees, the original subpoena filed with the Court establishes the subpoena was validly served.

---

3. The Court notes that the evidence in issue has been clearly and specifically requested by the Argentine court, and relates to material that is ordinarily discoverable. Respondents have asserted no ground which would preclude its discovery in Argentina. The Court therefore assumes the requested evidence would be discoverable in Argentina. *See Trinidad and Tobago,* 848 F.2d at 1156; *In re Court of the Commissioner of Patents for the Republic of South Africa,* 88 F.R.D. 75, 77 (E.D.Pa.1980).

4. Whether service of a subpoena without tendering of witness fees is sufficient has not been determined by the Second Circuit. Other courts addressing this issue have held that a subpoena tendered without witness fees or mileage allowances is invalid. *See CF & I Steel Corp. v. Mitsui & Co.,* 713 F.2d 494 (9th Cir.1983).

■ As the subpoena was properly served on March 14, 1988, the objections of respondents on April 21, 1988, under either Fed.R.Civ.P. 45(b) or 45(d), were untimely. Respondents never brought a motion to quash the subpoena duces tecum, pursuant to Fed.R.Civ.P. 45(b), instead simply failing to comply with the ordered document production. *See, Ghandi v. Police Dep't of City of Detroit,* 74 F.R.D. 115 (E.D.Mich. 1977) (witness may not disregard subpoena he has not challenged by motion to quash). Moreover, the written objections to the deposition subpoena were not made until April 21, 1988, thirty-eight days after service of the subpoena. In fact, Citibank did not even contact petitioner until March 28, 1988, fourteen days after service of the subpoena. This failure to object timely constitutes a waiver of any objections. *See* Civil Rule 46(e)(1) of this Court.

Furthermore, respondents' objections, even if considered by this Court, are unpersuasive. Therefore, the subpoena will be enforced.

### 4. *Reasonableness of Subpoena*

Respondents contend that the subpoena is unreasonable and oppressive under Fed. R.Civ.P. 45(b) and therefore should be vacated. Encompassed under the rubric of reasonableness are such factors as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which documents are described and the burden imposed." *United States v. International Business Machines Corp.,* 83 F.R.D. 97, 104 (S.D.N.Y. 1979) (footnote omitted). The burden of production is measured with regard to the size and resources available to the responding party. *Id.* at 108. The burden of persuasion in this instance is on the party seeking to quash or vacate the subpoena. *Id.*

■ The main thrust of respondents' argument is based upon the prior litigation between the parties. However, the extensive factual recitations by respondents concerning the prior litigation between the parties is irrelevant to the present application. The matter before this Court is a letter rogatory duly issued by an Argentine court which is concerned with the matter pending before it and which seeks information from Citibank and requests this Court's assistance in obtaining it. Respondents seek to have this Court implicitly rule upon the propriety of the proceeding before the Argentine court. However, any infirmities in the Argentine proceeding should be raised in the Argentine court.

Moreover, the Court notes that the prior actions in the New York State courts were discontinued by joint stipulation. In the case against the Sumar siblings the stipulation explicitly stated, "Olga Sumar preserves her right to pursue any of the claims asserted in this action in any court located in any jurisdiction." Lebow Aff., Exhibit G. Nor is the fact that a previous request was made by an Argentine court, in another proceeding, and subsequently withdrawn relevant. This withdrawal occurred solely because the parties had stipulated to the requested information. Petitioner is seeking evidence, which is clearly both relevant and essential to the proceeding in Argentina, by the proper legal procedures. The fact that previous suits have been brought and discontinued have no bearing on the present application. The Court has carefully reviewed and considered the request for assistance submitted by petitioner. In the present instance a judicial proceeding is pending before an Argentine court and this Court declines to address the merits of the action in Argentina as properly a matter for the Argentine court.

Respondents additionally assert that the subpoena is impermissibly broad and vague because, like the underlying letter rogatory, it fails to specify the time period for which information is sought with particularity, except that the 1986 Exhorto seeks information "especialmente con posterioridad al 20 de Abril de 1980." Contrary to respondents assertion this language does not request information "only" after April 20 but has been officially interpreted as "specially after April 20, 1980." *See* Lebow Aff., Exhibit L. The Order and subpoena in the present case are sufficiently specific as they specify documents during a reasonable period of time and state with reasonable particularity the subjects to

which the documents relate.[5] *Cf. United States v. International Business Machines Corp.*, 71 F.R.D. 88 (S.D.N.Y.1976). In fact, it is hard to conceive of how the requests could be any more specific.

■ There has been no contention that the documents requested are either voluminous, an expense to produce or require the creation of new documents. *Cf. Id.* Nor has there been a contention that the subpoena must be vacated due to some privilege or other personal right inherent in the documents. It is undisputed that financial records of a non-party witness are not privileged. *See Hecht v. Pro–Football, Inc.*, 46 F.R.D. 605 (D.D.C.1969). The Court finds the subpoena duces tecum is neither unreasonable nor oppressive.

Additionally, respondents allege the subpoena and Order issued on March 11, 1988 exceed the scope of the letter rogatory. Respondents assert the letter rogatory merely permit an affidavit from the legal representative of Citibank, while petitioner contends that they authorize the deposition of a legal representative of Citibank. Although the letter rogatory itself refers to an "Affidavit" relative to a "questionnaire," these are not necessarily terms of art in Argentine law. The uncontroverted affidavit of Carlos E. Alfaro, Esq.[6], sworn to on December 27, 1988 ("Alfaro Aff."), states that the "Letter Rogatory to the Foreign Court is requesting a full deposition of Citibank officials in order to find out the truth in this case." Alfaro Aff. ¶ 3(c). However, the Court hereby limits the scope of the deposition ordered. The Citibank witness must simply explain and describe the documents produced and respond to the questions propounded in the 1986 Exhorto.

### 5. Costs

■ Petitioner, however, is not entitled to costs against either Citibank or its attorneys. Federal Rule of Civil Procedure 37(a)(4) and (b) do not authorize sanctions for failure of a nonparty witness to comply with a subpoena duces tecum.[7] The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Rule 45(f). *Pennwalt Corp. v. Durand–Wayland, Inc.*, 708 F.2d 492 (9th Cir.1983). As Citibank failed to object timely to the subpoena, pursuant to Rule 45(d)(1), it may be held in contempt, pursuant to Rule 45(f), and sanctions may therefore be imposed. Nevertheless, the Court is reluctant to impose costs in the present instance. Citibank objected to the subpoena, at the request of its client, as soon as the objections were brought to its attention. Additionally, petitioner has not diligently pursued this matter, waiting an inordinate amount

---

**5.** The Order and subpoena request the following documents:

    a) All documents evidencing the existence of any Citibank account of any type in the name of Jezmine Sarah Pacha de Sumar (also known as Sara Sumar), held individually or jointly with any other person or persons that existed prior to April 20, 1980.

    b) With respect to all accounts mentioned above, provide the account numbers and all documents evidencing fund movements, withdrawals and money transfers since the opening of said accounts and in particular for the period after April 20, 1988.

    c) Explain the transactions occurring in those accounts (i.e., who drafted checks and to whom, who made withdrawals transfers and deposits, etc.) and determine whenever possible, particularly in the case of joint accounts, the ownership of the funds in said accounts.

    d) All information requested above should be provided with respect to the accounts numbered 10.441. 854 and numbered P.O. 570.044. Attach as appendices the documents, or their certified copies, concerning the opening, movements and closure of these particular accounts.

Simpson Aff., Exhibit A.

**6.** Carlos E. Alfaro is duly qualified and licensed to practice law in Argentina. He is a member of the law firm of Allende & Brea, one of the largest law firms in Argentina and is presently in charge of the New York branch of that firm. He is Vice–President of the American Foreign Lawyers Association in New York and member of the Inter–American Affairs and of the Foreign and Comparative Law Committee of the Association of the Bar of the City of New York. Alfaro Aff.

**7.** Sanctions would not be appropriate in this instance for failure to comply with the deposition subpoena. The propriety of conducting a deposition pursuant to the subpoena was deferred by the parties without prejudice. In light of this, imposing costs in this instance is unwarranted.

**474**

of time before seeking to enforce the subpoena. Furthermore, Citibank has indicated that if the Court orders enforcement of the subpoena it will, of course, comply. For these reasons, petitioner's application for costs is denied.

### CONCLUSION

Petitioner's motion to compel Citibank, N.A. to produce certain documents and a witness for deposition as set forth in the Order and subpoena of this Court dated March 11, 1988 (Broderick, J), is granted. Citibank is hereby ordered to comply with the subpoena and Order. The deposition is to be conducted in accordance with the limits stated in this opinion.

Petitioner's application for costs is denied.

SO ORDERED.