In re: **REQUEST FROM CANADA PURSUANT TO the TREATY BETWEEN the UNITED STATES OF AMERICA AND CANADA ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS.**

No. 1:00MC00118.

United States District Court,
M.D. North Carolina.

June 14, 2001.

Memorandum Opinion, July 30, 2001.

John W. Stone, Jr., Office of U.S. Attorney, Greensboro, for In re Request from Canada Pursuant to the Treaty Between the United States of America and Canada on Mutual Legal Assistance in Criminal Matters, plaintiff.

Daniel R. Taylor, Jr., Mark Andrew Stafford, Kilpatrick Stockton, L.L.P., Winston–Salem, NC, for Movants.

## ORDER

BULLOCK, District Judge.

This matter is before the court on the motion of two individuals (the "Movants") to place documents under seal. After docketing the motion reasonably in advance of deciding the issue to give notice to the public and press, and with the consent of the Assistant United States Attorney acting as Commissioner for this proceeding, the court finds:

1. The Movants have requested that the court place under seal the following documents: Memorandum of Law in Support of Joint Motion to Quash Subpoenas and for a Protective Order [Doc. # 7]; Declaration in Support of the Joint Motion to Quash Subpoenas [Doc. # 8]; and Brief in Support of Motion to Place Documents Under Seal [Doc. # 10].

2. No person has indicated a desire to voice an objection to the sealing of these documents.

3. These documents contain confidential information regarding Movants' work relationships and other personal matters.

4. The Memorandum of Law in Support of Joint Motion to Quash Subpoenas and for a Protective Order [Doc. # 7] and Declaration of in Support of Joint Motion to Quash Subpoenas [Doc. # 8] relate to discovery which is ordinarily conducted in private.

5. Unlike a summary judgment motion or sentencing hearing, a decision on these motions does not adjudicate substantive rights and serve as a substitute for a trial or an integral part of a trial.

6. Movants have not been indicted. These proceedings, however, insinuate criminal activity and Movants have no opportunity to prove their innocence.

7. Minimal redaction of the documents would not effectively protect the privacy interests of the Movants. If sufficiently redacted to protect the Movants' privacy interests, the documents would be so abstract as to render them valueless.

8. Sealing the documents is the only means of effectively protecting the privacy interests of the Movants.

IT IS THEREFORE ORDERED that the Memorandum of Law in Support of Joint Motion to Quash Subpoenas and for a Protective Order [Doc. # 7], Declaration in Support of the Joint Motion to Quash Subpoenas [Doc. # 8], and Brief in Support of Motion to Place Documents Under Seal [Doc. # 10] **BE PLACED UNDER SEAL** and kept confidential indefinitely.

## MEMORANDUM OPINION

This matter is before the court on a motion to quash subpoenas by two individuals ("Movants") who are residents of the Middle District of North Carolina. Pursuant to the *Treaty Between the United*

*States of America and Canada on Mutual Legal Assistance in Criminal Matters,* March 18, 1985 (entered into force January 24, 1990) (Gov't's Resp. to Mot. to Quash Ex. 1) ("the Treaty" or "MLAT"), the court-appointed Commissioner for the present action has subpoenaed Movants at the request of the Canadian government. For the following reasons, Movants' motion to quash subpoenas will be denied.

## FACTS

On May 12, 2001, the Canadian government requested assistance from the United States regarding an investigation of the smuggling of tobacco products and the non-payment of applicable taxes and duties. This court appointed Assistant United States Attorney John W. Stone, Jr., as Commissioner for purposes of this investigation pursuant to the Treaty. The Movants were served with subpoenas requiring them to provide testimony about the alleged smuggling scheme.

## DISCUSSION

Movants contend that they would not be required to provide testimony under Canadian law and that the Treaty's implementing legislation, 28 U.S.C. § 1782, requires that foreign discoverability law should apply. Consequently, Movants argue, the subpoenas should be quashed. The Commissioner states that whether the Movants could be compelled to testify under Canadian law is irrelevant. The Commissioner contends that under the Treaty the United States is obligated to provide requested assistance and that the Treaty does not indicate that requests should be subject to the requesting party's laws. Further, the Commissioner asserts that Section 1782 provides only the process that should be utilized to comply with the Treaty and that the obligatory nature of the Treaty supersedes judiciary discretion granted by Section 1782. The Commissioner contends that although Section 1782 commits substantial discretion to a district court considering a request for assistance in the form of a letter rogatory, the mandatory nature of the Treaty preempts the broad discretion granted under the statute.

■ A letter rogatory is a request from one court to another of independent jurisdiction. In this case, Canada's request was not made by a Canadian court, but rather by the Canadian government. Movants disagree that a request by the Canadian government pursuant to the Treaty should limit a district court's discretion to deny the requested assistance. Even if Section 1782 controls the discoverability requirements of a request made pursuant to the Treaty, the Commissioner asserts that the law is unsettled regarding whether foreign laws should be applied.

■ Treaties are contracts negotiated and entered by states. *Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 253, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984). The Treaty is self-executing and under Article VI of the Constitution it possesses the status of an act of Congress. *Breard v. Pruett,* 134 F.3d 615, 622 (4th Cir.) (Butzner, J., concurring), *cert. denied,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). Under the terms of MLAT, the United States may deny requested assistance if the request is not made in conformity with the provisions of the Treaty or if the execution of the request would be contrary to public interest as determined by the Attorney General or officials designated by him. *MLAT,* Art. V, 1.

■ The requested assistance, the taking of testimony, is explicitly provided for by the Treaty. Article XII, Section 1, provides that "[a] person requested to testify and produce documents, records or other articles in the Requested State may

be compelled by subpoena or order to appear and testify and produce such documents, records and other articles, in accordance with the requirements of the law of the Requested State." Movants argue that the "law of the Requested State" means that Section 1782 controls the discoverability requirements of Canada's request. Under Section 1782, "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." Whether "any legally applicable privilege" includes foreign privileges is a matter of debate.

The Second Circuit has held that Section 1782 does not require that evidence sought in the United States be discoverable under foreign laws. *In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir.), *cert. denied*, 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 376 (1993); *see also In the Matter of Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir.1995) (stating that lack of discoverability under foreign law is a factor of limited relevance). The holding in *Gianoli Aldunate* differed from the approach taken in *In re Erato*, 2 F.3d 11 (2d Cir.1993), relied upon by the Movants. The Second Circuit examined the relationship between Section 1782 and a treaty with the Kingdom of the Netherlands in *In re Erato* and indicated that the explicit language of the treaty, stating that foreign testimonial privileges did not apply, narrowed Section 1782's incorporation of both foreign and domestic privileges. *Id.* at 15. Subsequently, the *Euromepa* court agreed with the reasoning in *Gianoli Aldunate*. and further supported the approach by examining a statement by "a chief architect" of the most recent amendments to Section 1782 explaining that the drafters of the statute realized:

'[M]aking the extension of American assistance dependent on foreign law would open a veritable Pandora's box.... It

would, [the drafters] judged, be wholly inappropriate for an American district court to try to obtain [an understanding of the applicable foreign law] for the purpose of honoring a simple request for assistance.'

*Euromepa*, 51 F.3d at 1099 (quoting Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L.J. 215, 235 (1994)).

Likewise, the Third Circuit has declined to impose a discoverability requirement on foreign requests. In *In re Application pursuant to 28 U.S.C. Section 1782 for an Order Permitting Bayer AG to take Discovery*, the court stated that "imposing a requirement that the materials sought to be discoverable in the foreign jurisdiction would be inconsistent with both the letter and spirit of [Section 1782]." 146 F.3d 188, 193 (3d Cir.1998). The court also noted that its earlier decision in *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132 (3d Cir.1985), had been misinterpreted by the Fifth and Eleventh Circuits as imposing the requirement that requested information be discoverable under relevant foreign law. *Bayer AG*, 146 F.3d at 193.

With respect to a letter rogatory, rather than a request by a private litigant, the Fifth Circuit has held that the district court need not determine the discoverability under foreign law of the information requested. *In re Letter Rogatory from the First Court of First Instance in Civil Matters, Caracas, Venezuela*, 42 F.3d 308, 310 (5th Cir.1995). In making this determination, the Fifth Circuit relied on "the language and purposes of § 1782, as well as principles of comity and international relations." *Id.* The court noted that second-guessing a foreign court's request would be the type of slight that Section 1782 seeks to avoid. *Id.* at 311.

Conversely, the First and Eleventh Circuits have held that foreign requests for assistance under Section 1782 must meet foreign discoverability requirements. *In re Application of Asta Medica, S.A.,* 981 F.2d 1, 7 (1st Cir.1992); *Lo Ka Chun v. Lo To,* 858 F.2d 1564, 1566 (11th Cir.1988). The First Circuit expressed its concern that "foreign litigants may use Section 1782 to circumvent foreign law and procedures." *Asta Medica,* 981 F.2d 1, 6. The Eleventh Circuit does not reveal its reasoning in *Lo Ka Chun.* Instead, it relies on its previous decision in *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151 (11th Cir.1988), for the proposition that a district court must decide whether evidence would be discoverable in a foreign country before granting assistance. In *Trinidad and Tobago,* the Eleventh Circuit presented a detailed history of Section 1782, but only one paragraph of the opinion considers the issue of foreign discoverability because the parties did not indicate any applicable privilege under foreign laws that would have prevented discovery. *Id.* at 1156. The court cites to the Third Circuit's opinion in *John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132 (3d Cir.1985), which the Third Circuit subsequently stated was misinterpreted, to support its holding. *Trinidad and Tobago,* 848 F.2d at 1156.

In *In re Letter of Request from Amtsgericht Ingolstadt, Federal Republic of Germany,* 82 F.3d 590 (4th Cir.1996), the Fourth Circuit addressed the question of whether a district court must determine whether a request made by a foreign court would be discoverable under foreign law. A German court requested aid in obtaining a blood sample from the defendant for purposes of determining paternity. *Id.* at 591. After considering the requirements and purposes of the *Convention on the Taking of Evidence Abroad* and Section 1782, the Fourth Circuit concluded that the district court was not required to determine the discoverability of the blood sample under German law. *Id.* at 592.

Although *Amtsgericht Ingolstadt* involved a request from a foreign court regarding a civil matter rather than a request from a foreign government regarding a criminal matter, the Fourth Circuit's reasoning in *Amtsgericht Ingolstadt* is instructive. The Fourth Circuit noted that "28 U.S.C. § 1782 reflects 'the twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Amtsgericht Ingolstadt,* 82 F.3d at 592 (citing *In re Application of Malev Hungarian Airlines,* 964 F.2d 97, 100 (2d Cir.), *cert. denied,* 506 U.S. 861, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992)). Similarly, the preamble of MLAT states a desire to "improve the effectiveness of both countries in the investigation, prosecution and suppression of crime through cooperation and mutual assistance in law enforcement matters." In *Amtsgericht Ingolstadt,* the court stated that "the [*Convention on the Taking of Evidence Abroad*] and [Section 1782] envision considerable cooperation with foreign courts' requests for assistance and a general practice of reciprocity." *Id.* Likewise, MLAT and Section 1782 in this case anticipate cooperation with the Canadian government's requests for aid and reflect a desire for a symbiotic relationship.

The position that courts in the requested state need not be concerned with discoverability laws of the requesting state is further supported by the *Technical Analysis* (the "Analysis") prepared by the United States delegation to MLAT. The Analysis of the Treaty was reviewed by the Canadian delegation to MLAT. (Comm'r's Resp. to Mot. to Quash Subpoe-

nas and for Protective Order, Ex. 1 at 14). The Analysis states that the phrase "in accordance with the requirements of the law of the Requested State" encompasses testimonial privileges and immunities as well as procedure. *Id.* Additionally, the Analysis provides that "[t]he parties agreed that questions concerning the applicability of privileges provided by the law of the Requesting State would be preserved for consideration by the courts of that State." *Id.*

In this case, Canadian authorities, not an individual, have requested aid from the United States pursuant to a treaty that was entered into by both countries with the express purpose of providing mutual assistance in criminal investigations. Delegates from both countries discussed the applicability of foreign privileges and agreed that foreign immunities and privileges should be resolved by the requesting state after the witness has been compelled to answer. The Movants' objections to the propriety of compelling their testimony when such testimony would not be discoverable in Canada has been duly noted for the record. Furthermore, this court has already taken steps to protect Movants' identities. The confluence of these facts leads to the conclusion that the depositions should be taken and Canadian courts can later, if necessary, determine the admissibility of this discovery. This procedure promotes mutual assistance without encouraging foreign litigants to utilize the United States' liberal discovery rules to circumvent foreign law. Therefore, the court will deny Movants' motion to quash the subpoenas.

## CONCLUSION

For the foregoing reasons, Movants' motion to quash subpoenas will be denied.