**In re LETTER OF REQUEST FROM the SUPREME COURT OF HONG KONG pursuant to 28 U.S.C. § 1782, for assistance in obtaining evidence in a proceeding brought by Attorney General of Hong Kong, Applicant, against Lorrain Esme Osman, Rais Bin Saniman, and George Tan Soon–Gin, Respondents.**

**No. M19–117 (RWS).**

United States District Court, S.D. New York.

July 2, 1991.

---

Otto G. Obermaier, U.S. Atty. S.D.N.Y., New York City (Mark J. Stein, Asst. U.S. Atty., of counsel), for U.S.

Solomon & Fornari, P.C., New York City (James D. Fornari, Richard M. Zuckerman, Tab K. Rosenfeld, of counsel), for respondent Lorrain Esme Osman.

## OPINION

SWEET, District Judge.

Respondent Lorrain Esme Osman ("Osman") has moved for an order (1) certifying to the Supreme Court of Hong Kong that discovery conducted in the United States pursuant to certain Letters of Request issued in Hong Kong was conducted in violation of United States law, and (2) directing the United States Attorney and the Attorney General of Hong Kong to return the improperly obtained materials. For the following reasons, Osman's motion is granted as set forth below.

### Background

This case arises out of criminal proceedings instituted in Hong Kong in November 1985, alleging fraud and corruption by Osman and various others in their conduct of the affairs of a bank in Hong Kong.[1] In December 1985 Osman was arrested in London, where he has been detained pending extradition proceedings to Hong Kong.

On June 15, 1989, Graham A. Harris ("Harris"), Senior Assistant Crown Prosecutor in the Attorney General's Chambers of Hong Kong, made an application to the Supreme Court of Hong Kong for the issuance of Letters of Request to obtain banking records held in New York for use in the case against Osman. The application was granted and the Letters of Request were signed, and on June 20, 1989 they were sent to the United States Department of Justice in Washington, D.C. In relevant part, the Letters[2] stated:

> NOW I, the Registrar of the Supreme Court of Hong Kong, HEREBY REQUEST for the reasons aforesaid and for the assistance of the said Court THAT you will be pleased to summon the said witness and such other witnesses as the agents of the Attorney General of Hong Kong humbly request you to so summon, to attend for examination and to produce the documents and records as aforesaid, at such time and at such place as you shall appoint, before such person ap-

---

1. The details of the Hong Kong criminal proceedings are not relevant to the instant motion.

2. Several Letters of Request were issued, each directed at obtaining records from a different bank. The operative language of each letter appears to have been identical.

pointed by you as according to your procedure is competent to take the testimony of witnesses and require the production of documents. *AND THAT* you shall require such witness or witnesses to be examined viva voce touching the said matters in question in the presence of agents of the Attorney General of Hong Kong or such of them as shall, on due notice given, attend the examination. *AND I* further request that you will permit the agents of the Attorney General of Hong Kong or such of them as shall be present to examine such witnesses as may, after due notice in writing, be produced.

*AND I* further request that you will be pleased to cause the evidence of the said witnesses to be reduced into writing and all documents and records relevant to the subject matter of this request produced on such examination to be duly marked for identification, and that you will be further pleased to authenticate such examination by the seal of your tribunal or in such other way as is in accordance with your procedure and to return it ... for transmission to the Supreme Court of Hong Kong.

(emphasis in original).

In late June of 1989, Osman's legal advisers in Hong Kong, inspected the Hong Kong court files relating to the Letters of Request and were allowed to make copies of the relevant documents filed in support of the application. Hong Kong counsel then requested of the Hong Kong Attorney General that Osman be given notice of any discovery scheduled to be taken pursuant to the Letters of Request.

In November 1989, Assistant United States Attorney Mark J. Stein ("Stein") of the Southern District of New York received copies of the Letters of Request issued by the Hong Kong court. On March 19, 1990, Stein presented the Letters before the Honorable Vincent L. Broderick, who signed an order pursuant to 28 U.S.C. § 1782 appointing Stein as a "Commissioner to take steps as are necessary, including issuance of sub-

poenas to appear and to produce documents and physical evidence pursuant to Rule 17(c), Fed.R.Crim.P., and to obtain testimony and other evidence in conformity with the captioned Letter of Request; to submit all evidence obtained in accordance herewith ... to representatives of the Government of Hong Kong. ..." *In re Letter of Request from the Government of Hong Kong*, No. M19–117 (S.D.N.Y. Mar. 19, 1990) ("the March Order"). The order was filed under seal, but has been unsealed in the course of the instant motion.

In April 1990 Stein served Notices of Deposition upon each of the banks designated in the Letters of Request. These Notices stated that they were served "pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure." [3] Although the Notices directed that certain documents should be produced at the depositions, Stein requested that the banks simply produce the documents and indicated that if any depositions were necessary they would be scheduled later. Over the next few months Stein received documents from the banks and forwarded them to the Attorney General's office in Hong Kong. Stein then learned that representatives of the Hong Kong Attorney General would arrive in New York in September 1990 to take the depositions of the recordkeepers of the various banks, and Stein began to schedule the depositions. Neither Osman nor his Hong Kong or American legal counsel were informed that any depositions were to take place.

On September 18, 1990, the Honorable Peter K. Leisure issued an order appointing Harris and another representative from the Hong Kong Attorney General's Office, Graham C. Grant ("Grant"), as additional Commissioners under the Letters of Request, thereby authorizing them to conduct the depositions of the bank recordkeepers. *In re Letter of Request from the Government of Hong Kong*, No. M19–117 (S.D.N.Y. Sept. 18, 1990) ("the September Order") As with the March Order, the September Order authorized the "issuance

---

**3.** Like the Letters of Request, the Notices of Deposition appear to be identical except for the

parties and the particular information to be produced.

of subpoenas to appear and produce documents and physical evidence pursuant to Rule 17(c), Fed.R.Crim.P., and to obtain testimony and other evidence in conformity with the captioned Letter of Request." This order is also under seal.

Depositions of the representatives from each of the banks were conducted by Harris and Grant between September 18 and September 27, 1990. Because Osman had not been notified of the depositions, he was unable either to attend them and cross-examine the witnesses or to file a motion to quash the deposition subpoenas.

At the completion of the depositions, Stein received the transcripts from the court reporters, sent them to be signed by the deponents, and forwarded the signed depositions and accompanying exhibits to the Hong Kong Attorney General. As of April, 1991, two of the deponents' signed depositions had not yet been received by Stein and, therefore, had not been forwarded to Hong Kong.

In December, 1990, Osman's Hong Kong counsel learned of the New York depositions when the Hong Kong Attorney General indicated in open court that some of the evidence sought in the Letters of Request had already been obtained.

On February 26, 1991, Osman's New York counsel wrote to the United States Attorney for the Southern District of New York suggesting that the procedures followed pursuant to the Letters of Request from Hong Kong, including the absence of any notice to Osman, might have violated 28 U.S.C. § 1782. The U.S. Attorney did not respond to this letter, and Osman thereafter obtained an Order to Show Cause on March 29, 1991 in Part I of this Court seeking a ruling that the procedures used for the depositions had been improper and directing the return of the materials from Hong Kong. On April 9, 1991, a Second Order to Show Cause was issued, and a Supplemental Order was issued on April 12, directing service upon Harris and Grant personally. The motion was argued and fully submitted on May 3, 1991.

*Discussion*

Osman contends that as an identified respondent in the underlying criminal proceedings in Hong Kong and on each Letter of Request he should have been given notice of the depositions and an opportunity to attend and participate. He contends that the lack of such notice violated both § 1782 and the March and September Orders, and requires that the improperly obtained materials be returned from Hong Kong.

The Government counters that notice to Osman was not required under either the March Order or the September Order, and that § 1782 was not violated in that both orders specifically provided for procedures under which notice was not necessary. The government further asserts that even if it should have given Osman notice of the depositions, its failure to do so was not so serious as to warrant the relief which he now seeks.

1. Osman Was Entitled to Notice of the Depositions and an Opportunity to Attend

   A. *Under § 1782 Osman Should Have Received Notice*

The statute which authorizes federal courts to act upon foreign requests for assistance in obtaining documentary and testimonial evidence is 28 U.S.C. § 1782, which provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimo-

ny or statement or producing the document or other thing. *To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.* § 1782(a) (emphasis added). Thus the starting point for any inquiry into the procedures employed in carrying out a Letter of Request is the Federal Rules of Civil Procedure.

### B. Under the Civil Rules, Osman Would Have Been Entitled to Notice.

Under the Civil Rules, Rule 30 governs the taking of depositions. It specifically provides that "[a] party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action." While it may be the case that Osman is technically not yet a party to the Hong Kong criminal proceeding, he was sufficiently identified in the Letters of Request as an adverse party that under the Civil Rules he should have been given notice of the depositions. *See also* Fed.R.Civ.P. 27(a)(2) (providing for notice to "expected adverse party" where deposition is taken prior to instituting action).

Thus, unless the Orders prescribed procedures other than the Civil Rules for taking the bank representatives' depositions, Osman is correct in his assertion that the depositions were not conducted in conformity with the applicable procedures.

### C. The Orders Did Not Adopt the Rules of Criminal Procedure for the Taking of Depositions.

The Government asserts that both the March and September Orders specifically provided for use of the Federal Rules of Criminal Procedure in place of the Civil

Rules called for under § 1782, and that under the Criminal Rules Osman was not entitled to notice of the depositions. Under this theory, the explicit reference in the Orders to Criminal Rule 17(c) constituted an adoption of the Criminal Rules in their entirety for all discovery to be taken under the Orders.

However, the Orders indicate that Rule 17(c) was to apply to the "issuance of subpoenas to appear and produce documents and physical evidence," and not to the "obtain[ing] of testimony and other evidence," suggesting that only limited application of the Criminal Rules was contemplated. This conclusion is also supported by the fact that Rule 17(c) itself concerns only subpoenas for the production of physical evidence, and has no relation to the deposition process. Finally, the Government's use of Deposition Notices which referred to Civil Rule 30(b)(6) belies a clear intent to apply the Criminal Rules to the deposition process.[4]

### D. Even Under the Criminal Rules Osman Would Have Been Entitled to Notice.

More problematic for the Government's position is the fact that even if the Orders had adopted the Criminal Rules in their entirety Osman would still have been entitled to notice of the depositions. While it is true that Rule 17 does not call for notice to all parties of the issuance of subpoenas, either for the production of physical evidence under 17(c)[5] or for depositions under 17(f), the actual taking of the deposition is governed by Criminal Rule 15. Rule 15(b) specifically provides that "[t]he party at whose instance a deposition is to be taken shall give to every party reasonable written notice of the time and place for taking the deposition."

---

**4.** The Government contends that its use of Civil Deposition Notices was simply inadvertent, and that the erroneous use of these notices does not overcome the wording of the Orders. However, where it is the meaning of the Orders which is itself in issue, the Government's decision, inadvertent or not, to rely on the Civil Rules must be taken as evidence of its interpretation of the Orders.

**5.** For that reason, the document production itself was not improper, and the documents were properly sent to Hong Kong.

### E. The Orders Did not Adopt Any Other Procedure for the Depositions.

The only remaining alternative is that the Orders specified a procedure for the depositions which was different from both the Civil Rules and the Criminal Rules. It could be argued that the phrase "to obtain testimony and other evidence in conformity with the captioned Letter of Request" should be interpreted not only as describing the evidence to be discovered but also the means of obtaining it. However, it seems clear that this reference to the Letters of Request, which contain quite detailed descriptions of the particular record sought from each bank, is primarily identifies the evidence desired by the Hong Kong authorities.

In order to decide whether the reference is also meant to incorporate specific procedures for obtaining evidence described in the Letters, it is necessary to examine the Letters themselves. The main difficulty with adopting such an expansive interpretation of the Orders is that Letters contain very little in the way of detailed procedure. In brief, they request that the appropriate witnesses be directed to produce the requested records and to appear for testimony, and that the Attorney General of Hong Kong be given notice of the times of the depositions in order to be present to examine the witnesses. The overall lack of detail here, combined with the lack of a clear mandate in the Orders that the procedure set forth in the Letters is intended to govern the discovery, compels the conclusion that the Letters do not provide for *ex parte* depositions and that no such procedure was adopted by the Orders.[6]

In summary, the Orders did not prescribe a procedure which authorized the taking of depositions without notice to Osman. Therefore, Osman was improperly denied his right to contest the subpoenas prior to the depositions and to appear at and participate in the depositions, and the resulting transcripts, having been obtained improperly, were improperly transferred to Hong Kong.

### 2. The Appropriate Remedy

Given that the discovery was improperly conducted by the court-appointed commissioners Stein, Harris and Grant, it is now necessary to consider the nature of the remedy to be provided to Osman. As mentioned above, Osman seeks an order directing the U.S. Attorney, the Attorney General of Hong Kong, and the Commissioners appointed by this Court to take appropriate steps to secure the return of the improperly obtained evidence. Osman also suggests that the Government be prevented from transmitting to Hong Kong the two deposition transcripts still in its possession.

On the present motion, Osman has made no claim that he could have had the deposition subpoenas quashed, nor has he alleged any facts which could reasonably support such a claim. Therefore, it is unnecessary to grant his relief merely to allow him to move to quash.

However, the denial of the right to cross-examine is a substantial denial of the appropriate process. Although the Government contends that any such damage is illusory, as the testimony at the depositions related exclusively to "the authenticity of the bank documents that were produced by the bank, and the meaning of certain of the entries," a review of the Letters of Request and the Deposition Notices indicates that the documents sought from the banks included, in addition to ordinary account

---

6. Of course, it has occasionally been said that "Letters Rogatory are customarily received and appropriate action taken with respect thereto ex parte." *In re Letters Rogatory from Tokyo District, Tokyo, Japan,* 539 F.2d 1216, 1219 (9th Cir.1976); *accord In re Letter of Request From Crown Prosecution Service,* 870 F.2d 686 (D.C.Cir.1989); *Application of Sumar,* 123 F.R.D. 467 (S.D.N.Y.1988); *In re Letters Rogatory Issued by Director of Inspection of Government of India,* 385 F.2d 1017 (2d Cir.1967).

However, this statement does not contemplate *ex parte* discovery taken pursuant to the Letter of Request, but rather refers only to the process of presenting the request to a court and to obtain the order authorizing discovery. Indeed, such *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it. *Tokyo District, supra,* 539 F.2d at 1219.

records, such items as "records of customer interviews" and "any Bank officer's diary or other notes of conversations with any person or persons authorized to give instructions in relation to the account." Osman has raised an issue as to the nature and reliability of the records involved. By denying Osman notice and consequently an opportunity to participate in the depositions the Government has deprived him of any challenge to, or interpretation of these records.[7]

While Osman is unable to cite any precedent authorizing an order that the Hong Kong Attorney General return the transcripts, neither is there any authority denying one. The real question is whether the Hong Kong Attorney General is subject to the power of this Court. In applying for the Orders to carry out the discovery pursuant to the Letters of Request, the Attorney General submitted himself to the jurisdiction of this Court.

Under these circumstances, the depositions are suppressed as violative of the appropriate procedures as set forth above, unless Osman is afforded an opportunity to review the transcripts and to cross-examine the witnesses. The deposition transcripts still in the United States will also be suppressed and retained here subject to the same condition.

*Conclusion*

For the foregoing reasons, Osman's motion is granted and the United States Attorney and the Attorney General of Hong Kong are directed to suppress the improperly obtained deposition transcripts.

It is so ordered.

---

**7.** The Government properly urges this Court not to preempt or to second-guess the evidentiary ruling of the Hong Kong tribunal. However, here Osman has been deprived of an opportunity to challenge or interpret the evidence obtained without compliance with the appropriate procedures. Regardless of the applicable Hong Kong rules, Osman has shown that he is entitled to relief from this Court.