## In re LETTERS OF REQUEST FROM the SUPREME COURT OF HONG KONG.

### No. M 19–117 (RWS).

United States District Court, S.D. New York.

May 10, 1993.

Roger S. Hayes, U.S. Atty., S.D. New York, New York City (Mark Stein, Asst. U.S. Atty., of counsel), for U.S.

Solomon, Fornari, Weiss & Moskowitz, P.C., New York City (James D. Fornari, Richard M. Zuckerman, of counsel), for respondent Lorrain Esme Osman.

## OPINION

SWEET, District Judge.

Respondent Lorrain Esme Osman ("Osman") has again moved this Court for an order directing that transcript of depositions taken commencing on September 18, 1992, pursuant to Letters of Request issued by the Supreme Court of Hong Kong not be certified to that Court, and directing that United States Attorney, the United States Department of Justice ("DOJ"), and the Attorney General of Hong Kong not to transmit such deposition transcripts and any documents produced in connection with them to the Supreme Court of Hong Kong. For the

following reasons, Osman's motion is granted subject to the conditions set forth below.

### Prior Proceedings

Osman is the subject of criminal proceedings originally instituted in Hong Kong in November 1985, in which Hong Kong authorities alleged fraud and corruption by Osman and various others in their conduct of the affairs of a bank in Hong Kong.[1] In December 1985 Osman was arrested in London, where he was initially detained pending extradition proceedings to Hong Kong. He was extradited to Hong Kong in 1992, where he presently remains incarcerated pending trial.

On June 15, 1989, Graham A. Harris ("Harris"), Senior Assistant Crown Prosecutor in the Attorney General's Chambers of Hong Kong, made an application to the Supreme Court of Hong Kong for the issuance of twelve Letters of Request (the "Letters") to obtain banking records and depositions in New York for use in the case against Osman. His application was duly granted first by the Supreme Court of Hong Kong and then received by the DOJ in this country. The Letters simply requested that witnesses be summoned and evidence taken, and did not specify what rules of procedure were to govern the depositions or the production of documents.

Osman's Hong Kong counsel were allowed to inspect the Hong Kong court files relating to the Letters of Request and were allowed to make copies of the relevant documents filed in support of the application. Osman's Hong Kong counsel, Colin Cohen of Boase & Cohen ("Cohen") then requested of the Attorney General of Hong Kong that Osman be given notice of any discovery scheduled to be taken pursuant to the Letters of Request.

In November 1989, Assistant United States Attorney Mark J. Stein ("Stein") of the Southern District of New York received copies of the Letters of Request issued by the Hong Kong court. On March 19, 1990, Stein presented the Letters before the Honorable Vincent L. Broderick, who signed an order pursuant to 28 U.S.C. § 1782 appoint-

---

1. The details of the Hong Kong criminal proceedings are not relevant to the instant motion, although it should be noted that Osman is only one of a number of defendants.

ing Stein as a "Commissioner to take steps as are necessary, including issuance of subpoenas to appear and to produce documents and physical evidence pursuant to Rule 17(c), Fed.R.Cr.P., and to obtain testimony and other evidence in conformity with the captioned Letter of Request; to submit all evidence obtained in accordance herewith ... to representatives of the Government of Hong Kong...." *In re Letter of Request from Hong Kong,* No. M19–117 (S.D.N.Y. Mar. 19, 1990) ("the March Order"). Pursuant to the March Order, Stein served Notices of Deposition in April, 1990, upon each of the banks designated in the Letters of Request (the "Banks"). These Notices stated that they were served "pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure."[2] Although the Notices directed that certain documents should be produced at the depositions, Stein requested that the Banks simply produce the documents and indicated that if any depositions were necessary they would be scheduled later. Neither Osman nor his Hong Kong counsel nor James Fornari and Richard Zuckerman ("Zuckerman"), Osman's U.S. counsel, were informed that any depositions were to take place.

On September 18, 1990, the Honorable Peter K. Leisure issued an order appointing Harris and another representative from the Hong Kong Attorney General's Office, Graham C. Grant ("Grant"), as additional Commissioners under the Letters of Request, thereby authorizing them to conduct the depositions of the bank recordkeepers. *In re Letter of Request from Hong Kong,* No. M19–117 (S.D.N.Y. Sept. 18, 1990) ("the September 1990 Order") As with the March Order, the September 1990 Order authorized the "issuance of subpoenas to appear and produce documents and physical evidence pursuant to Rule 17(c), Fed.R.Cr.P., and to obtain testimony and other evidence in conformity with the captioned Letter of Request."

Depositions of the representatives from each of the Banks were conducted by Harris and Grant as Commissioners between September 18 and September 27, 1990 (the "Sep-

tember, 1990 Depositions"). Osman was not notified of these depositions. At the completion of the depositions, Stein received the transcripts from the court reporters, sent them to be signed by the deponents, and forwarded the signed depositions and accompanying exhibits to the Hong Kong Attorney General.

In December 1990, Osman and his Hong Kong counsel first learned that discovery pursuant to the twelve Letters of Request had taken place in December 1990, when the Hong Kong Attorney General referred to the Letters in open court and stated that he had obtained some of the evidence sought in the Letters. Osman then applied to this Court requesting that the Attorney General, H.K., be required to return the transcripts of the depositions and accompanying documents and that transcripts and documents not yet sent to Hong Kong be suppressed.

On July 2, 1991, in *In re Letter of Request from the Supreme Court of Hong Kong,* 138 F.R.D. 27 (S.D.N.Y.1991), this Court held that under 28 U.S.C. § 1782 and the terms of the Letters, the taking of evidence in Osman's case must be conducted in accordance with the Federal Rules of Civil Procedure. Since Osman had received neither notice of the depositions nor an opportunity to attend and participate or cross examine the deponents, the September 1990 Depositions violated § 1782 and the March and September 1990 Orders. Accordingly the Court ordered the deposition transcripts still in this country to be suppressed and such transcripts sent to Hong Kong to be returned. On July 29, this Court ordered the depositions to be renoticed provided Osman was given an opportunity to review the deposition transcripts and to cross examine pursuant to F.R.Crim.P., Rule 15, (the "July 1991 Order").

In August 1991, counsel for Osman were provided with the depositions and accompanying exhibits by the Attorney General of Hong Kong and informed that witnesses would be produced for their cross examination. Osman was also informed about similar depositions of representatives of the Banks which were scheduled to take place in San

---

**2.** Like the Letters of Request, the Notices of Deposition appear to be identical except for the parties and the particular information to be produced.

Francisco, California. On October 15, 1991, counsel for Osman requested leave to cross-examine the witnesses in both jurisdictions. In March, 1992, the parties settled on the time between September 14th and 25th as an acceptable time for the deposition of witnesses.

All of the witnesses in New York were scheduled to be deposed between September 18 and September 25, 1992 at the New York office of Clifford Chance, a British law firm with a branch in Hong Kong retained by the Hong Kong Attorney General's office in connection with this matter ("Clifford Chance"). All of the witnesses in San Francisco were scheduled for deposition from September 14th to September 17th.

On September 15, 1992, Stein, acting on the advice of Clifford Chance, made an *ex parte* application to this Court to appoint the Honorable Marvin E. Frankel ("Frankel" or the "New York Commissioner") as a new Commissioner to preside over the evidence gathering proceedings.[3] Frankel informed all parties that his law firm currently represented one of the deponent Banks (The Bank of New York) and previously had represented three other deponent Banks. Frankel himself had not been involved with any of the matters handled by his law firm for the Banks. The application by Stein for the order appointing Frankel made no mention of Frankel's law firm's involvement with the Bank of New York.

The Honorable Pierre N. Leval in his capacity as Part I judge granted the application, appointed Frankel as a Commissioner and signed an order (the "September 1992 Order") prepared by Stein on behalf of the Attorney General of Hong Kong providing that depositions were to be conducted according to the Letters of Request under Federal Rules of Criminal Procedure, Rule 15:

> IT IS FURTHER ORDERED that the taking of statements of witnesses before Judge Frankel, be conducted pursuant to

the provision of Rule 15 of the Federal Rules of Criminal Procedure.

The September 1992 Order was transmitted to Clifford Chance on the afternoon of September 17, 1992. Cohen alleges that it was first provided to him and to Osman when Cohen appeared on September 18, 1992, for the first scheduled deposition in New York.

Cohen had already appeared and objected to the taking of evidence earlier in the week in San Francisco. He had stated on the record that the depositions should not proceed because Osman had not been provided with adequate discovery in the Hong Kong criminal case and because Osman's co-defendant George Tan Soon–Gin ("Tan") was neither present nor represented at the depositions.[4] Cohen maintained that he was entitled to attend cross-examination conducted by counsel for Osman's codefendant Tan and to adopt a line of questioning as a result of questions put forward by counsel for Tan. Commissioner Woodruff, a former Federal Magistrate appointed to preside over the taking of evidence in San Francisco, rejected Cohen's arguments and ordered that the depositions proceed as scheduled, which they did. On September 15, Cohen informed Harris that he would make the same objections at the New York depositions and, in addition, that he would raise the question of Frankel's conflict of interest.

On September 18, at the first of the New York depositions, Cohen did not cross examine the witnesses during the depositions in New York, but stated that he was reserving his right to do so at a later date. He also reiterated the same objections already made in the context of the San Francisco depositions, and further objected on the ground that Frankel's law firm's representation of the Bank of New York represented an impermissible conflict of interest. He did not object at that time to the fact that no parties had arranged for Osman, then incarcerated in England, to attend the depositions in person pursuant to Rule 15, F.R.Cr.P., although

---

**3.** The United States has submitted a memorandum and affidavit of Stein, who recites that he has responsibility for assisting the Attorney General of Hong Kong. The Attorney General of Hong Kong has submitted no papers in opposition in this proceeding.

**4.** Osman indicates that Tan was given notice, but chose not to proceed.

he has since alleged this was due to the fact he had not had an opportunity to review or consult with U.S. counsel about the September 1992 Order.

Frankel rejected Cohen's arguments and made a specific finding that there was no conflict of interest which would prevent him from serving in this capacity as Commissioner. He also found that Cohen's other objections were without merit. Following this ruling, Cohen stated on the record his objections and that he reserved his right to cross examine the witnesses at a later date, and then left the deposition. Neither Cohen nor Osman's New York counsel attended any further depositions after September 18, 1992. The deposition of the Bank representatives proceeded as scheduled over the course of the next week in the absence of any counsel representing the interests of Osman.

Stein maintained in a letter to Zuckerman dated November 10, 1992, that the reference to Rule 15 of the Criminal Rules "was in error." (Zuckerman Aff.Exh. G, H, ¶ 2). Stein has also submitted a letter dated September 11 from Clifford Chance to Frankel which advised Frankel that "the order under which you are appointed commissioner provides that the deposition taking shall be conducted pursuant to the Federal Rules on Civil Procedure."

The instant motion was referred to this Court as a result of this Court's order of July 2, 1991. The motion was heard and marked fully submitted on January 27, 1993.

### Discussion

Osman requests that the September 1992 depositions be placed under seal and not transmitted to the Supreme Court of Hong Kong for two reasons: first, because Osman was denied the right to be present and thus the depositions were taken in violation of Rule 15, F.R.Cr.P., and second, because the New York Commissioner's law firm's prior representation of the Bank of New York creates an impermissible conflict of interest on the part of the Commissioner.

Osman's counsel had an opportunity in accordance with the September, 1992 Order to review the transcripts and to cross-examine the witnesses who were deposed in September 1992 in accordance with the July 1991 Order. The only question presented relates to the procedures afforded with respect to the September 1992 depositions.

### Presence of the Defendant

The September 1992 Order appointed Frankel as the New York Commissioner pursuant to § 1782 "to take such steps as are necessary to fulfill the request of the Supreme Court of Hong Kong as set forth in its Letters of Request, including the summoning of witnesses, the taking of testimony and receiving documents and other evidence," and contemplated proceedings pursuant to the July 1991 Order:

> Depositions of the bank officers were first taken in September, 1990 pursuant to these same letters of request by representatives of the Government of Hong Kong who were appointed ... as commissioners for the purpose of obtaining evidence.... Subsequent to these depositions, pursuant to a motion by counsel of the Hong Kong defendant, Lorrain Osman, the Honorable Robert W. Sweet issued an Order suppressing the evidence obtained pursuant to these depositions, unless defense counsel was given the opportunity to examine the witnesses. That opportunity is being afforded by resuming these depositions later this month ... Frankel has agreed to preside over these depositions ...

However, by its terms, the September 1992 Order determines the procedure to be employed in conducting the depositions authorized by the July 1991 Order. In all respects other than the provision for the taking of statements of witnesses under Rule 15, F.R.Cr.P., it is completely compatible with the March, September 1990, and July 1991 Orders.

An order issued pursuant to an international Letter of Request is authorized by 28 U.S.C. § 1782, which provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or re-

quest made, by a foreign or international tribunal or upon the application of any interested person.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

This Court held in its previous Opinion that the provision in the March and September 1990 Orders for the issuance of subpoenas pursuant to Rule 17(c), F.R.Cr.P., suggested only limited application of the Federal Rules of Criminal Procedure, and that for other aspects of the proceedings the Federal Rules of Civil Procedure were to apply.

However, the September 1992 Order explicitly provides for evidence to be taken under the Criminal Rules. A district court has exercised its discretion to order the production of evidence for use in a foreign or international tribunal. *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989); *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir.1976); *In re Letter of Request from Justice Court (Montreal)*, 523 F.2d 562, 566 (6th Cir.1975). Where the Letters of Request at issue do not provide for the evidentiary procedures to be followed, the Federal Rules of Civil Procedure will govern unless the district court in its discretion provides otherwise. That is the case here.

The scope of examination under Rule 15, F.R.Cr.P. (to preserve testimony for trial) is narrower than under the Civil Rule (to discover evidence) and of course Rule 15, F.R.Cr.P., provides that the defendant himself, even if in custody, must be offered an opportunity to be present:

> The officer having custody of a defendant shall be notified of the time and place set for the examination and shall, unless the defendant waives in writing the right to be present, produce the defendant at the examination and keep the defendant in the presence of the witness during the examination.... A defendant not in custody shall have the right to be present at the examination upon request subject to such terms as may be fixed by the court, but his failure, absent good cause shown, to appear after notice and tender of expenses in accordance with subdivision (c) of this rule shall constitute a waiver of that right and of any objection to the taking and use of the deposition based upon that right.

Rule 15(b), F.R.Cr.P.

■ To prevent the use of deposition testimony under Rule 15, F.R.Cr.P. from being a violation of the defendant's Sixth Amendment rights of confrontation and right to counsel, the Rule provides that the defendant and his attorney must be given an opportunity to be present, even if that means that all necessary costs are borne by the government and even if the defendant is not in the custody of the authority prosecuting him. *Cf. Furlow v. United States*, 644 F.2d 764, 766 (9th Cir.1981), *cert. denied*, 454 U.S. 871, 102 S.Ct. 340, 70 L.Ed.2d 175 (1981) (deposition admissible because district court issued "a Writ of Habeas Corpus to the Sheriff of Yakima County [where defendant was in state custody] to have him present during the deposition"). Where the defendant is in the government's custody, the government must take measures to protect the defendant's rights of confrontation even where circumstances do not permit direct confrontation, *see United States v. Gifford*, 892 F.2d 263, 264 (3rd Cir.1989), *cert. denied*, 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990) (defendant was linked to deposition in Belgium through two telephone lines, to be "able to listen to the testimony by virtue of an open telephone line" and simultaneously "able to confer with his attorney through the use of a private line"); *United States v. Salim*, 855 F.2d 944 (2d Cir.1988) (defendant accessible by telephone during French deposition held in stages to allow counsel to review transcript with client before cross examination); *United States v. Sines*, 761 F.2d 1434, 1440 (9th Cir.1985) (witness incarcerat-

ed in Thailand deposed via videotape in presence of defendant's counsel to preserve demeanor evidence where defendant refused to travel to Thailand for fear of arrest).

No such arrangements were made here. While Osman's counsel made no objection at that time to the taking of the depositions in Osman's absence, his attorney's failure to object, without the consent of Osman, does not constitute a waiver of Osman's right. See Rule 15(b), F.R.Cr.P. A written waiver on the part of the defendant himself has been required since 1970, when a statutory amendment for the first time allowed depositions at the request of the government, see 18 U.S.C. § 3503(b), (c). The waiver requirement was incorporated into the Rule because such depositions would be used at trial against the defendant. See Wright & Miller, *Federal Practice & Procedure, Criminal 2d* § 244 at 20 (1982).

According to the Government, another suppression of the depositions would amount to an "undue burden" upon the Hong Kong authorities, and that may well be the case. It is also entirely possible that the provision in the September 1992 Order was, as had been suggested by the Government, simply a typographical error. However, it is not appropriate for this Court to reach that conclusion even though it may well be that a clarification of the September 1992 Order *nunc pro tunc* can obviate the Rule 15 problem.

### Conflict of Interest on the Part of the Commissioner

Frankel's role can be analogized to that of judge or magistrate, whose disqualification is governed by 28 U.S.C. § 455:

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.... He shall also disqualify himself ... where he has ... personal knowledge of disputed evidentiary facts concerning the proceeding; where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter....

■ Under this test, the New York Commissioner's relationship with the banks at issue is too attenuated to justify his disqualification. His law firm has represented the Bank on matters wholly unrelated to the present case, and the Bank is not a party to the litigation for which this evidence was being obtained. The depositions concern matters about which the Bank was merely a custodian of records. The substantive standard for refusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned. *Apple v. Jewish Hosp. & Medical Center*, 829 F.2d 326, 333 (2d Cir. 1987). Under this standard, Frankel had no knowledge or association sufficient to require recusal.

It should also be noted that the decision whether to grant or deny a recusal motion is a matter confided to the district court's discretion. *Id.*

The reasons for this are plain. The judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a refusal motion. In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case.... A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.

*In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988), *cert. denied sub. nom. Milken v. SEC*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989).

A Commissioner appointed pursuant to § 1782 is a creature of the statute, the purpose of which to gratify the interests of the foreign parties seeking the evidence. The process of obtaining evidence in a civil-law jurisdiction is normally conducted by a judicial officer rather than private attorneys. *Societe Nat. Ind. Aero. v. U.S. Dist. Court*, 482 U.S. 522, 543, 107 S.Ct. 2542, 2555, 96 L.Ed.2d 461 (1987) (holding that the Hague Convention on collecting evidence abroad is not exclusive).

Most foreign tribunals expect that the request [for assistance in collecting evidence in the United States] will be executed by an American judicial authority (a district judge or United States Magistrate). The law of most foreign countries places great weight on the fact that the witness actually appears before a judge.... But since foreign letters of request are, as a rule, executed in accordance with American law, and considering that district judges by tradition delegate the examination of witnesses to the parties, the Civil Division seeks wherever possible to obtain a witness' testimony through his voluntary cooperation....

Edward C. Weiner, *In Search of International Evidence*, 58 *Notre Dame Lawyer* 60, 65–66 (1982) (citations omitted). In cases of involuntary cooperation, testimony may be compelled under § 1782, which allows for the appointment of a Commissioner to preside over the taking of the evidence in order to make the evidence more admissible in the courts of the country requesting such; it is a device to bridge the gap between international differences in civil and criminal procedure. The usual method is to designate a magistrate or the Assistant U.S. Attorney as the commissioner. *Id.* "Private individuals may be appointed commissioners ... but, as in this case, foreign governments typically turn to law-enforcement authorities for help in criminal matters," *Young v. U.S. Dept. of Justice*, 882 F.2d 633, 635–36 (2d Cir.1989), *cert. denied*, 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990) (citations omitted). The commissioner's authority comes from his power of appointment:

The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.

22 C.F.R. § 92.67(a) (1992). Since the power of the commissioner comes from his appoint-

ment, any person who seems appropriate to the court may be appointed commissioner.

The U.S. prosecutor of a related U.S. fraud case has been appointed as a commissioner pursuant to § 1782, *see In re International Judicial Assistance (Brazil)*, 936 F.2d 702, 703 (2d Cir.1991) (evidence may be produced through letter rogatory in absence of pending foreign proceeding only if such proceeding is imminent). An Assistant U.S. Attorney, acting under his appointment as commissioner, may even compel information which a government authority cannot compel without complying with certain restrictions mandated by the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–22 (1988), *see Young v. U.S. Dept. of Justice*, 882 F.2d at 639. The District court of the Southern District of Florida appointed a law firm, Stroock & Stroock & Lavan ("Stroock") as a commissioner pursuant to § 1782, *In re Letter of Request for Judicial Assistance (Haiti)*, 669 F.Supp. 403, 405 (S.D.Fla.1987), for the gathering of evidence relevant to the prosecution in Haiti and the deposed president Jean–Claude Duvalier. Although lawyers for Duvalier alleged that Stroock should be disqualified, "because Stroock is contractually entitled to receive a percentage" of all assets alleged embezzled by Duvalier which were recovered by the new government of Haiti in the action, the District Court held that since the party requesting judicial assistance need not be neutral, the commissioner collecting it need not be either. *Id.* at 407.

■ Even if (as is not the case here) the Commissioner has a direct stake in the outcome of the case (as was the case in *Haiti*) that does not disqualify the Commissioner under American law. Since the New York Commissioner was appointed only for the purpose of making the evidence admissible in a foreign jurisdiction, Osman may challenge the qualifications of the Commissioner only in the foreign jurisdiction. A district court should not decide whether the requested evidence will be admissible in a foreign court, *see John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3d Cir.1985); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d at

1156, and this Court will not make that determination here.

### Conclusion

For the foregoing reasons, Osman's motion to suppress the depositions is granted, subject, however, to any amendment of the September 1992 Order which would make the Rules of Civil Procedure applicable, in which case this order shall be vacated and the depositions forwarded to Hong Kong without further application.

It is so ordered.